691 A.2d 263

**Peter JUNG**

v.

**SOUTHLAND CORPORATION t/a 7–11, et al.**

**No. 996, Sept.Term 1996.**

Court of Special Appeals of Maryland.

March 27, 1997.

Andrew S. Kasmer (Benjamin T. Boscolo, and Chasen & Boscolo, Chartered on the brief), Greenbelt, for Appellant.

Marvin L. Andersen (Nancy L. Harrison, on the brief), Annapolis, for Appellees.

Argued before EYLER, THIEME and SONNER, JJ.

EYLER, Judge.

We are called upon to interpret the Workers' Compensation Act and to decide whether the Workers' Compensation Commission has the authority to modify an injured employee's "average weekly wage," based on an increase in wages subsequent to the accidental injury and subsequent to the initial determination of "average weekly wage."

For the reasons set forth below, we affirm the decision of the trial court and hold that "average weekly wage" cannot be modified based on an actual increase in wages occurring subsequent to the accidental injury.

### Facts

Appellant, Peter Jung, filed a Workers' Compensation claim on August 3, 1992, as the result of an accidental injury sustained on June 30, 1992 while in the course of employment. On October 27, 1992, the Commission awarded temporary total disability benefits from June 30, 1992, continuing until December 21, 1992, at the rate of $193 per week based on an average

weekly wage of $288.12. The claim was not contested by appellees, Southland Corporation, employer, and American Protection Insurance Company, insurer. In December, appellant returned to work.

On July 28, 1995, appellant began losing time from work due to the 1992 injury. Appellees began paying temporary total benefits in the amount of $193 per week, the same amount as previously determined. On November 17, 1995, appellant filed Issues with the Commission, seeking an upward adjustment of his average weekly wage to reflect his most recent hourly rate, pursuant to Md.Code Ann., Labor & Employment Art. § 9–622 (1991 Repl.Vol., 1992 Supp.).[1] After a hearing before the Commission on January 22, 1996, the Commission issued an order dated January 29, 1996, allowing the claim for temporary total benefits from July 28, 1995 and continuing during the period of temporary total disability. In doing so, the Commission upwardly adjusted appellant's average weekly wage based upon appellant's current wages, finding that the "average weekly wage shall be $320.75 pursuant to § 9–602[ (a) ](3) of the Labor Article," and awarded benefits in the amount of $214 per week.

Because of the modification, appellees appealed to the Circuit Court for Montgomery County and moved for partial summary judgment on the ground that the Commission lacked authority under the law to adjust the average weekly wage based on appellant's current wages. After appellant's response and a hearing, the trial court granted the motion. This appeal followed.

### Discussion

This is a case of first impression in Maryland and has been dealt with infrequently in other jurisdictions. As in all cases

---

1. Unless otherwise indicated, all statutory references are to this version of the Labor & Employment Article of the Annotated Code of Maryland. *See* § 9–601; *Baltimore County v. Fleming,* 113 Md.App. 254, 258–60, 686 A.2d 1161 (1996) (law in effect at time of accidental injury controls).

of statutory interpretation, we seek to determine the intention of the Legislature.

Appellant argues that the Commission has discretion to increase appellant's previously determined average weekly wage pursuant to the authority to reopen a claim contained in § 9–622(a) and to modify an award pursuant to § 9–736(b). Section 9–622(a) provides:

*Amount of payment.*—If, under an initial claim filed on or after January 1, 1988, temporary total disability benefits are reopened under § 9–736(b) of this title, the employer or its insurer shall pay the covered employee compensation that equals two-thirds of the average weekly wage of the covered employee, but

(1) does not exceed the lesser of:

(i) the average weekly wage of the State on the date of reopening; or

(ii) 150% of the initial award; and

(2) is not less than the initial award.

Appellant asserts that the January 29, 1996 order constitutes a "reopening" within the meaning of § 9–622 [2] and that a finding of average weekly wage can be modified pursuant to § 9–736(b), which provides:

*Continuing powers and jurisdiction; modification.*—(1) The Commission has continuing powers and jurisdiction over each claim under this title;

(2) Subject to paragraph (3) of this subsection, the Commission may modify any finding or order as the Commission considers justified.

(3) Except as provided in subsection (c) of this section, the Commission may not modify an award unless the modifi-

---

**2.** Appellees expressly state that they are not raising as an issue whether the Commission's January 29 action constituted a reopening within the meaning of § 9–622, though they proceed to argue that it was not a reopening because the award was uncontested, automatic, and there was never an award of permanency. For purposes of this appeal, we assume, without deciding, that the Commission's action constituted a reopening.

cation is applied for within 5 years after the last compensation payment.

Pointing to the broad language contained in § 9–736(b)(2), appellant explains that the modified "finding" was the average weekly wage and the modified "order" was the compensation rate. Appellant concludes that both modifications are within the discretion of the Commission, subject to review only for an abuse of discretion.

Central to appellant's argument is the definition of "average weekly wage," as the rate of compensation for temporary total disability is statutorily set at an amount equal to either two-thirds of this basis or to the average weekly wage of the State,[3] whichever is lower. *See* § 9–621. Average weekly wage is defined within § 9–602(a), which provides:

(a) *Computation—In general.*—(1) Except as otherwise provided in this section, the average weekly wage of a covered employee shall be computed by determining the average of the weekly wages of the covered employee;

(i) when the covered employee is working on full time; and

(ii) at the time of:

1. the accidental personal injury; or

2. the last injurious exposure of the covered employee to the hazards of an occupational disease.

(2) For purposes of a computation under paragraph (1) of this subsection, wages shall include:

(i) tips; and

(ii) the reasonable value of housing, lodging, meals, rent, and other similar advantages that the covered employee received from the employer.

(3) If a covered employee establishes that, because of the age and experience of the covered employee at the time of the accidental personal injury or last injurious exposure to

---

**3.** This amount is set annually by the Department of Labor, Licensing and Regulation. *See* § 9–603.

the hazards of the occupational disease, the wages of the covered employee could be expected to increase under normal circumstances, the expected increase may be taken into account when computing the average weekly wage of the covered employee under paragraph (1) of this subsection.

Relying on § 9-602(a)(3), appellant argues that, upon a reopening, the Commission is authorized to hear evidence concerning an increase in wages of a covered employee. Exercising the discretion conferred by § 9-736(b), appellant asserts, the Commission may choose to revise the claimant's average weekly wage upward to include any increase in wages that has occurred since the time of the accidental injury.

As further support, appellant argues that, if the Commission were not allowed to recompute average weekly wage, § 9-622 would have no purpose other than to benefit high wage earners whose average weekly wage was greater than the average weekly wage of the State, forcing the Commission initially to award a lower percentage of their weekly wage. Appellant sees this as leading to unfair results, for upon reopening, a high wage earner could seek a modification up to the amount of the State average weekly wage as of the date of the reopening or 150 per cent of the initial award. *See* § 9-622(a)(1). A worker injured while receiving a low wage, and whose wages have increased substantially since the initial claim, cannot be given the benefit of that increase. In order to prevent such an unjust result, appellant asserts that § 9-622 and § 9-736 should be construed to allow the Commission the authority to modify a finding of average weekly wage based upon the current wage on the date of reopening.

Citing *Superior Builders, Inc. v. Brown*, 208 Md. 539, 119 A.2d 376 (1956), appellant argues that its interpretation of the statute is consistent with the public policy of this State and with the principle that the Worker's Compensation Act is to be interpreted liberally. If there appears to be a conflict in the statute, or at the very least an ambiguity, appellant argues that it must be resolved in favor of the claimant. *See Lisow-*

*sky v. White,* 177 Md. 377, 9 A.2d 599 (1939); *Kraushar v. Cummins Const. Corp.,* 180 Md. 486, 25 A.2d 439 (1942).

While we agree that the Workers' Compensation Act should be liberally construed in favor of the claimant, *Luby Chevrolet, Inc. v. Gerst,* 112 Md.App. 177, 186, 684 A.2d 868 (1996), when the language of the compensation statute "is plain and free from ambiguity and expresses a definite and sensible meaning, the courts are not at liberty to insert or delete words with a view toward making the statute express an intention which is different from its plain meaning." *Frank v. Baltimore County,* 284 Md. 655, 661, 399 A.2d 250 (1979) (quoting *Gatewood v. State,* 244 Md. 609, 617, 224 A.2d 677 (1966)). As we reiterated in *Luby Chevrolet v. Gerst,* "a court must not surmise legislative intention contrary to the plain language of the statute." 112 Md.App. at 186, 684 A.2d 868 (quoting *Lowery v. McCormick Asbestos Co.,* 300 Md. 28, 46, 475 A.2d 1168 (1984)). Consequently, we review the Commission's action, as did the trial court, to determine if it based its finding upon an erroneous construction of the law. *Frank,* 284 Md. at 658, 399 A.2d 250.

The statutory definition of average weekly wage contained in § 9–602 states that average weekly wage is fixed as of the time of injury. *See* § 9–602(a)(1). The Commission's regulations are consistent, stating that average weekly wage is determined by the average wage earned during the thirteen weeks prior to the accident. COMAR 14.09.01.07. An employer may dispute the Commission's average weekly wage determination, but must do so within 60 days of the award, or it will be assumed that the employer has acceded to the determination. *See* COMAR 14.09.07 B.

Subject to the five year limitations period, an injured worker may petition the Commission to reopen a claim for purposes of modification. *See* § 9–736(b). It has been recognized that Maryland has had for some time one of the broadest reopening statutes in the nation. *Subsequent Injury Fund v. Baker,* 40 Md.App. 339, 345, 392 A.2d 94 (1978) (interpreting 9–736(b)'s predecessor, former Md.Code Ann.,

art. 101, § 40(c), substantially the same as § 9–736(b)). *See* 3
A. Larson and L. Larson, *Larson's Workmen's Compensation
Law* (1996), § 81.52(c). Generally, § 9–736 confers broad
authority upon the Commission to retain continuing jurisdic-
tion over the award in any case in which a prior award has
been made, and may make any modification it deems justified.
Nevertheless, this does not confer upon the Commission the
authority to act outside of the authority conferred by the Act.

Section 9–602(3) permits flexibility in cases where "the
wages of the covered employee could be expected to increase
under normal circumstances." While § 9–602(3) has yet to be
applied in any reported Maryland opinion, similar clauses have
been interpreted in other jurisdictions to encompass, but not
be limited to, apprentices, *Judd v. Sanatorium Comm. of
Hennepin County*, 227 Minn. 303, 35 N.W.2d 430 (1948),
student nurses, *Pascoe v. Workmen's Compensation Appeals
Board*, 46 Cal.App.3d 146, 120 Cal.Rptr. 199 (1975), and recent
college graduates, *State v. Industrial Commission of Ohio*, 71
Ohio App.3d 388, 594 N.E.2d 52 (1991).

The crucial factor in applying § 9–602(3) and similar provi-
sions in other states, in determining average weekly wage, is
whether the future increase in wages is too speculative. This
is concisely stated in *Deichmiller v. Industrial Comm'n*, 147
Ill.App.3d 66, 100 Ill.Dec. 474, 479, 497 N.E.2d 452, 457 (1986),
where the court applied the Illinois version of § 9–602(3). In
*Deichmiller*, a plumber's apprentice applied for temporary
total disability benefits based upon the amount of union scale
wages he would receive as a journeyman plumber. Even
though his employer testified that, if the injured employee
were to take the required examination, the apprentice would
in all likelihood pass, the fact that the record showed that he
never took the union examination made the issue too indefinite
at the time of the award. "It is axiomatic that liability under
the [Illinois Workmens' Compensation] Act cannot be prem-
ised on speculation or conjecture but must be solely based on
the facts contained in the record. [Citation omitted]. Similar-
ly, an earnings loss award cannot be based on speculation as

to the particular employment level or job classification which a claimant might eventually attain." *Id.* Consequently, § 9–602(3) is limited in its application, and most important, for present purposes, is the fact that it focuses on circumstances as they existed at the time of the injury. Section 9–602(3) does not authorize a recalculation of average weekly wage based on actual events occurring subsequent to the original determination.

We acknowledge that such a construction may produce inequitable results. In a case adopting much of the rationale asserted by appellant, the Supreme Court of New Hampshire noted that under this more restrictive reading

> two employees who sustain injuries years apart but who go blind on the same day could receive vastly different scheduled awards even though at the time they lose their vision their wages are equal. Such an inequitable result does not comport with the beneficent purposes of the workmen's compensation laws.

*Ranger v. New Hampshire Youth Dev. Ctr.*, 117 N.H. 648, 377 A.2d 132, 135 (1977) (New Hampshire Workers' Compensation Act set forth a compensation schedule for permanent impairment based on average weekly wage but did not state what event determined the computation of the average weekly wage, *i.e.*, it was not expressly tied to the date of accidental injury). In addition to the fact that we are limited to interpreting the language of this State's statute, we note that the sword cuts both ways. If an employee returns to work at reduced wages after an accidental injury and after a determination of average weekly wage, compensation will still be payable based on the original average weekly wage calculation. *See* § 9–622(a)(2) (upon reopening, the rate of temporary total compensation cannot be less than the initial award). Regardless of the amount of current wages, the rate of compensation could increase if the average weekly wage exceeded the current State average weekly wage that has increased over time.

All forms of compensation are tied to the average weekly wage defined in § 9–602: temporary partial disability under § 9–615; temporary total disability under § 9–621; permanent partial disability under §§ 9–628, 9–629, and 9–630; and permanent total disability under § 9–637. Other than a rise in the State average weekly wage, an increase in extent or duration of disability, and the cost-of-living adjustment for permanent total disability under § 9–638, there is no provision within the Workers' Compensation Act for increases in payment. Due to the permanent nature of the injuries that are the subject of a § 9–638 award, the Legislature has recognized the loss in value such an award will experience over time. If the Legislature had intended to confer a similar type of benefit upon the temporarily disabled, we presume it would have said so.

It may be that the Workers' Compensation Act was enacted in its present form based in part on a concern for predictability and administrative ease; a claimant may have multiple periods of disability. As stated in *DeBusk v. Johns Hopkins Hosp.*, 342 Md. 432, 440, 677 A.2d 73 (1996), "predictability . . . is the cornerstone of the workers' compensation scheme," but "[p]redictability and administrative ease, in the workers' compensation statutory plan as in all things, come at the price of *some* flexibility in unique or unusual circumstances." *Id.* at 438, 677 A.2d 73.

### Conclusion

We see nothing in the Workers' Compensation statute that authorizes a computation of average weekly wage other than as of the time of the accidental injury. While § 9–602(a)(3) does provide that expected increases in wages may be taken into account by the Commission, the determination must be made as of the time of the accidental injury.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.