717 A.2d 387

**Peter JUNG**

v.

**SOUTHLAND CORPORATION t/a 7–11, et al.**

**No. 46, Sept. Term, 1997.**

Court of Appeals of Maryland.

Sept. 15, 1998.

Benjamin T. Boscolo (Steven C. Rohan, Chasen & Boscolo, Chtd., on brief), Greenbelt, for petitioner.

Marvin L. Andersen (Law Office of Nancy L. Harrison, on brief), Annapolis, for respondent.

Argued before BELL, C.J., ELDRIDGE, RODOWSKY, CHASANOW, RAKER and WILNER, JJ., and ROBERT L. KARWACKI, Judge (retired), Specially Assigned.

BELL, Chief Judge.

This appeal presents the issue of the power of the Maryland Workers' Compensation Commission ("the Commission") to adjust the amount of the workers' compensation it ordered paid to an employee for temporary total disability when the employee makes a subsequent claim for such disability benefits and that employee's average weekly wage has increased. The Commission concluded that it had the power and, upon judicial review, the Circuit Court for Montgomery County found that it did not. On appeal, the Court of Special Appeals sided with the circuit court. *Jung v. Southland Corp.*, 114 Md.App. 541, 691 A.2d 263 (1997). This Court issued its writ of certiorari to resolve the important question raised in this appeal. We shall affirm the judgment of the Court of Special Appeals.

## I

The facts of this case are not in dispute. Peter Jung,[1] the petitioner, an employee of the Southland Corporation, one of

---

1. The Workers' Compensation Claim filed August 3, 1992 listed the claimant as, and was signed by, Hun Kyo Chung. That is also the name of the employee in the Commission Award dated October 27, 1992. Peter Jung was first mentioned in this record when the Insurer filed an issue with respect to the average weekly wage adjustment that the Commission made with respect to the petitioner's subsequent temporary total disability claim. In that form, the claimant was identified as "Peter Hun Kyo Jung." No issue has been raised as to identity and, so, we assume that Hun Kyo Chung and Peter Jung are one and the same person.

the respondents,[2] sustained, on June 30, 1992, an accidental personal injury as defined in Maryland Code (1991) § 9–101 of the Labor & Employment Article.[3] The petitioner's claim for workers' compensation benefits, filed August 3, 1992, was not contested by the respondent and, on October 27, 1992, the Commission passed an order awarding the petitioner temporary total disability benefits of $193.00 per week. Those benefits were calculated on the basis of an average weekly wage of $288.12. The petitioner's period of temporary total disability and, thus, the compensation payable in respect thereto, terminated in December, 1992.

Subsequently, in July, 1995, the petitioner began once again to experience problems with respect to his 1992 accidental injury, as reflected by the fact that he began losing time from work. Following this recurrence, the respondent made the same temporary total disability payments it did in 1992, in the amount set by the Commission in its October 27, 1992 order. Because the petitioner's average weekly wage had increased between the time of his return to work in 1992 and the recurrence, he asked the Commission to adjust the amount awarded upon the 1995 recurrence to reflect his 1995 average weekly wage. Following a hearing on the issue, the Commission, concluding that "[i]t can always be adjusted," entered an order awarding the petitioner temporary total disability payments of $214.00 per week, based on his then current average weekly wage of $320.00.[4]

---

**2.** The other respondent is American Protection Insurance Company. Unless otherwise indicated, "the respondent" refers to both it and Southland Corporation.

**3.** "(b) 'Accidental personal injury' means:

(1) an accidental injury that arises out of and in the course of employment...."
Unless otherwise indicated, future statutory references will be to the Labor and Employment Article.

**4.** The Commission's order indicated that average weekly wage was calculated "pursuant to Section 9–602(3) of the Labor Article." There is no such section. The parties agree, as do we, that the reference is to

When its Motion for Rehearing was denied,[5] the respondent sought judicial review in the Circuit Court for Montgomery County. In that court, it moved for partial summary judgment, arguing that § 9–622(a), the provision on which the petitioner relied before the Commission, does not permit the Commission to adjust a claimant's average weekly wage to reflect his or her current wages. Following a hearing, the trial court granted the Motion for Partial Summary Judgment. It found § 9–602(a)(3) dispositive. The court reasoned that, by setting out the "circumstances under which you can ask for a higher rate of pay at the time of your initial entry . . . to me indicates that the intent is that the rate is computed as of the date of injury, even when it is down the road." The petitioner appealed that judgment to the Court of Special Appeals, which, as we have already reported, affirmed.

Before the Court of Special Appeals, the petitioner relied on § 9–622(a) and § 9–736(b) to support his argument that the Commission has the authority, subject only to review for abuse of discretion, to increase a previously determined average weekly wage in connection with a claim that has been reopened. What is required, the petitioner asserted, is the reopening of a temporary total disability claim as allowed by § 9–622, which then triggers the broad modification provisions

---

Maryland Code (1991, 1996 Cum.Supp.) § 9–602(a)(3) of the Labor and Employment Article. That section provides:

\* \* \* \* \* \*

"(3) If a covered employee establishes that, because of the age and experience of the covered employee at the time of the accidental personal injury or last injurious exposure to the hazards of the occupational disease, the wages of the covered employee could be expected to increase under normal circumstances, the expected increase may be taken into account when computing the average weekly wage of the covered employee under paragraph (1) of this subsection."

Inasmuch as this provision applies to the initial determination of average weekly wage, see *infra*, the parties also agree, we think correctly, that it has no application to the resolution of the issue *sub judice*.

**5.** In that motion, the respondent argued the inapplicability of both § 9–602(a)(3) and § 9–622 to authorize the adjustment of average weekly wage once it has been determined.

of § 9–736(b). In this Court, although he continues to argue that "[t]ogether, the provisions of [§§ ] 9–736(b) and 9–622 provide the Commission with the discretion to modify the average weekly wage and rate of compensation in cases like Mr. Jung's subject to a maximum and minimum limit," the petitioner primarily relies on § 9–736(b)(2), and, in particular, the broadness of its language describing the Commission's power to modify "any finding." The respondent counters, consistent with the finding of the trial court, that the dispositive provision is § 9–602(a) and that the Commission is bound by the definition of average weekly wage it prescribes. It also denies that § 9–622(a) authorizes the Commission to recalculate a claimant's average weekly wage, pointing out that the focus of that section is on the current average weekly wage of the State, rather than of a claimant.[6]

## II

Critical to the issue whether increases in a claimant's wages, occurring after that claimant's average weekly wage has been determined in connection with a claim for temporary total disability, may be used by the Commission as an adjustment upon the reopening of the claim, is the meaning of "average weekly wage." To discern that meaning requires that several provisions of the Workers' Compensation Law be reviewed. Section 9–602(a) prescribes the method of computing the average weekly wage of a covered employee:

"(a) *Computation—In general.*—(1) Except as otherwise provided in this section, the average weekly wage of a covered employee shall be computed by determining the average of the weekly wages of the covered employee:

---

6. The respondent also maintains that "[t]he facts of this case do not constitute a 'reopening.'" The argument apparently hinges upon the fact that "there has never been an award of permanency." Given the disposition of the issues raised by the petitioner, it is not necessary that we address this issue. We note, however, that our decision in *Vest v. Giant Food Stores, Inc.*, 329 Md. 461, 476, 620 A.2d 340, 347 (1993), in which the Court indicated that "[n]o distinction is made between awards for temporary or permanent disability," may be instructive on the point.

"(i) when the covered employee is working on full time; and

"(ii) at the time of:

"1. the accidental personal injury; or

"2. the last injurious exposure of the covered employee to the hazards of an occupational disease."

The amount of a covered employee's benefit payments as a result of temporary total disability is addressed in § 9–621, which, in pertinent part, provides:

"(a) *Amount of payment.*—(1) Except as provided in paragraph (2) of this subsection, if a covered employee is temporarily totally disabled due to an accidental personal injury or an occupational disease, the employer or its insurer shall pay the covered employee compensation that equals two-thirds of the average weekly wage of the covered employee, but:

"(i) does not exceed the average weekly wage of the State; and

"(ii) is not less than $50.

The calculation of payments on reopening a temporary total disability claim is treated in § 9–622(a). That section provides:

"*Amount of payment.*—If, under an initial claim filed on or after January 1, 1988, temporary total disability benefits are reopened under § 9–736(b) of this title, the employer or its insurer shall pay the covered employee compensation that equals two-thirds of the average weekly wage of the covered employee, but

"(1) does not exceed the lesser of:

"(i) the average weekly wage of the State on the date of reopening; or

"(ii) 150% of the initial award; and

"(2) is not less than the initial award."

From the foregoing, several things may be gleaned. First, and most important, the average weekly wage of a covered employee is computed and, thus, is fixed, as the

intermediate appellate court opined, *Jung*, 114 Md.App. at 548, 691 A.2d at 266, at the time of the accidental personal injury. § 9–602(a)(2). Indeed, the language of that section is clear and unambiguous in that regard. Moreover, the meaning of that language is confirmed by the Commission's regulations, COMAR 14.09.01.07.[7] It is also confirmed by § 9–602(a)(3). By providing an exception to the general rule for computing average weekly wage in the situation in which "the wages of the covered employee could be expected to increase under normal circumstances," that section makes clear that average weekly wage is accidental personal injury specific; what a claimant's average weekly wage is ordinarily can be determined only by reference to when the applicable accidental personal injury occurred.

 Second, the compensation benefits paid in respect to a temporary total disability claim are calculated on the basis of

----

7. That regulation provides:

"A. *Preliminary Determination.* For the purpose of making an initial award of compensation before a hearing in the matter, the Commission shall determine the claimant's average weekly wage from gross wages, including overtime, based on the information filed with the Commission. That information shall include:

"(1) The average wage earned by the claimant during the 13 weeks before the accident provided that periods of involuntary layoff or involuntary authorized absences are not included in the 13 weeks;

"(2) Those weeks the claimant actually worked during the 13 weeks before the accident;

"(3) Vacation wages paid; and

"(4) Those items set forth in the Labor and Employment Article, § 9–602(a)(2), Annotated Code of Maryland.

"B. *Subsequent Determination.*

"(1)Amount Disputed. If the employer, employer's insurer, or the Uninsured Employers' Fund asserts that the average weekly wage determined by the Commission under § A of this regulation exceeds the actual average weekly wage of the claimant, that party, before paying benefits at the lower rate, shall file with the commission a statement containing the basis of the assertion that the actual average weekly wage is less than the amount determined by the Commission. The statement shall be filed within 60 days after the date of the initial award.

"(2) Waiver. The failure to file the statement in compliance with § B(1) of this regulation constitutes a waiver of the right to dispute the average wage as originally determined."

the claimant's average weekly wage [8] and are capped by the average weekly wage of the State.[9] § 9–621(a). Third, in the case of a reopened temporary total disability claim, as is the case with an initial claim, the claimant's compensation payments are two-thirds of that claimant's average weekly wage, § 9–622(a); in that circumstance, only the State's average weekly wage is tied to the date of reopening. § 9–622(a)(1). Finally, in none of these provisions is there a suggestion, not to mention any explicit statement, that a finding of average weekly wage is subject to adjustment, to the extent of the claimant's current wages, by the Commission when there is a recurrence of the disability caused by the accidental personal injury as a result of which the finding initially was made. In fact, such a suggestion is inconsistent with the requirement that "the average weekly wage of a covered employee ... be computed by determining the average of the weekly wages of the covered employee ... at the time of the accidental personal injury." § 9–602(a)(1)(ii). More to the point, given that requirement and its own express provision prescribing the use of the current state average weekly wage in computing a reopening claimant's compensation, § 9–622(a) simply is not amenable to a construction that, upon reopening a claim for temporary total disability, average weekly wage is computed at the time of reopening.[10]

---

**8.** Compensation payments for temporary partial disability, sec § 9–615, permanent partial disability, see §§ 9–628, 9–629, and 9–630, and permanent total disability, see § 9–637, are also tied to the claimant's average weekly wage. Only in the case of permanent total disability awards has the Legislature provided for cost of living adjustments. See § 9–638.

**9.** Section 9–603, captioned "State average wage-Weekly," provides (1996 Cum.Supp.):
 "On or before December 15 of each year, the Department of Labor, Licensing, and Regulation shall:
 "(1) determine the State average weekly wage as of July 1 of that year; and
 "(2) report the State average weekly wage to the Commission."

**10.** By its express terms, § 9–622(a) affects only those claimants whose average weekly wage at the time of their accidental personal injury was

Notwithstanding the foregoing, relying on § 9–736(b), the petitioner insists that the Commission was correct. Section 9–736(b) states:

*"Continuing powers and jurisdiction; modification.*—(1) The Commission has continuing powers and jurisdiction over each claim under this title.

(2) Subject to paragraph (3) of this subsection, the Commission may modify any finding or order as the Commission considers justified.

(3) Except as provided in subsection (c) of this section, the Commission may not modify an award unless the modification is applied for within 5 years after the last compensation payment."

The petitioner points out that § 9–736(b)(2) clearly and unambiguously empowers the Commission to "modify any finding or order as the Commission considers justified." He argues, "[s]ince the determination of the average weekly wage is a 'finding,'[11] § 9–736(b) clearly allows the Commission to modi-

---

sufficiently high that their compensation rate was capped by the State average weekly wage. Recognizing this, the petitioner argued in the Court of Special Appeals, "if the Commission were not allowed to recompute average weekly wage, § 9–622 would have no purpose other than to benefit high wage earners whose average weekly wage was greater than the average weekly wage of the State, forcing the Commission initially to award a lower percentage of their weekly wage." *Jung,* 114 Md.App. at 547, 691 A.2d at 265, thus leading to unfair results. Therefore, he urged "that § 9–622 and § 9–736 should be construed to allow the Commission the authority to modify a finding of average weekly wage based upon the current wage on the date of reopening." *Id.* at 547, 691 A.2d at 266. The intermediate appellate court rejected the argument. While acknowledging that this construction of § 9–622(a) may produce inequitable results, citing and quoting *Ranger v. New Hampshire Youth Dev. Ctr.,* 117 N.H. 648, 377 A.2d 132, 135 (1977), it pointed out that it was "limited to interpreting the language of this State's statute." *Id.* at 550, 691 A.2d at 267.

**11.** According to the petitioner, "[§ 9–602(a)] exists only to provide a formula for the calculation of the average weekly wage. The modification of that calculation (or finding) is provided for in Section 9–736(b) which gives the Commission the power to modify any finding or order." We agree with the respondent, that argument is flawed: "It ignores the fundamental difference between a *statutory* 'formula for calculation' and a *commission's* 'finding' based on that formula. The modification

fy that finding." Central to the argument is that § 9–736(b) is "among the most liberal reopening provisions in the country." *Vest v. Giant Food Stores, Inc.,* 91 Md.App. 570, 579, 605 A.2d 627, 632 (1992), aff'd. 329 Md. 461, 620 A.2d 340 (1993) (construing Maryland Code (1957, 1985 Repl.Vol.) Art. 101. § 40(c),[12] the predecessor to § 9–736(b)). See also *Subsequent Injury Fund v. Baker,* 40 Md.App. 339, 345, 392 A.2d 94, 98 (1978) (characterizing Art. 101, § 40(c) as "one of the broadest" reopening provisions).

■ To be sure, § 9–736(b) provides the Commission with broad revisory powers with respect to modification of its previous findings and orders. It does not follow, however, that power is unlimited or that the Commission may trump or disregard other Legislative directives, reflected in other statutory provisions, which are not, by their terms, limited or otherwise made subject to that power; the Commission, in other words, may not ignore clear statutory directives as long as it deems it is justified to do so. This Court made this very point in *Vest v. Giant Food Stores, Inc., supra,* 329 Md. at 461, 620 A.2d 340 in connection with the resolution of a different, but related, issue. At issue in that case was the interpretation of the predecessor to § 9–736(b), Art. 101, § 40(c). One of the arguments advanced by the claimant was that in its prior Award, the Commission expressly retained jurisdiction over the case for a future determination of permanent partial disability, thus tolling any applicable limitations period. *Id.* at 466, 620 A.2d at 342. Rejecting that argument, this Court opined:

> authority of the Commission extends only to its own orders. Upon exercising its modification authority the Commission is still bound by the provisions of the Workers' Compensation Act. It may not, as [the petitioner] argues, modify provisions of the Act."

**12.** Maryland Code (1957, 1985 Repl.Vol.), Article 101, § 40 was recodified in 1991 as Labor & Employment Article, § 9–736. See Chapter 8 of the Acts of 1991, § 2. The Revisor's Note indicates that it is "new language derived without substantive change from former Art. 101, § 40(b) through (d)." Thus, interpretations of former § 40(c) are equally applicable to § 9–736(b). *Vest v. Giant Food Stores, Inc.,* 329 Md. 461, 463 n. 1, 620 A.2d 340, 341 n. 1 (1993).

"The Commission cannot bypass the statutory restriction on its authority. An agency 'cannot override the plain meaning of the statute or extend its provisions beyond the clear import of the language employed.' *State Department of Assessments & Taxation v. Greyhound Computer Co. [Corp.]*, 271 Md. 575, 589, 320 A.2d 40, 47 (1974). See also *Supervisor v. Chase Associates*, 306 Md. 568, 579, 510 A.2d 568, 573 (1986); *Macke Co. v. Comptroller*, 302 Md. 18, 22–23, 485 A.2d 254, 257 (1984). It is clear from the history of § 40(c) that, by enacting a limitations provision, the General Assembly restricted the Commission's ability to exercise its authority to reopen prior awards. The Commission cannot bypass this restriction merely by *sua sponte* inserting a clause in an award of compensation."

*Id.* at 475–76, 620 A.2d at 347.

In this case, § 9–602(a) clearly and explicitly ties "average weekly wage" to the date of the accidental personal injury. An interpretation of the reopening provision to encompass adjustment of the claimant's average weekly wage requires that this aspect of § 9–602(a) be totally disregarded and, in effect, trumped. This is particularly the case in light of the fact that § 9–622(a), which defines the compensation to which the claimant is entitled on reopening in terms of that claimant's average weekly wage, does not separately or differently define that term and expressly contemplates the use of the State average weekly wage at the time of reopening in the calculation of that compensation. Moreover, such an interpretation permits the absurd result that the Commission must follow all statutory provisions when initially considering a case, but, by virtue of its broad, virtually unlimited power, is free to ignore them when it reopens those cases.

The petitioner argues that § 9–736(b) is plain and free from ambiguity, but nevertheless the intermediate appellate court failed to give effect to the Commission's power to modify "any finding or order as the Commission considers justified." We are not persuaded. Section 9–736 is a part of a comprehensive statutory scheme that includes § 9–602. We have said that, "[w]here the statute to be construed is a part of a

statutory scheme, the legislative intention is not determined from that statute alone, rather it is to be discerned by considering it in light of the statutory scheme." *GEICO v. Insurance Com'r,* 332 Md. 124, 132, 630 A.2d 713, 717 (1993). See *Blondell v. Baltimore City Police Dept.,* 341 Md. 680, 691, 672 A.2d 639, 645 (1996); *Ward v. Department of Public Safety & Correctional Services,* 339 Md. 343, 352, 663 A.2d 66, 70 (1995); *State v. Crescent Cities Jaycees Found., Inc.,* 330 Md. 460, 468, 624 A.2d 955, 959 (1993). Nor should the statute be read so as to render another statute in that statutory scheme, or any portion of it, meaningless, surplusage, superfluous or nugatory. *GEICO,* 332 Md. at 132, 630 A.2d at 717; *Tracey v. Tracey,* 328 Md. 380, 387, 614 A.2d 590, 594 (1992); *D & Y, Inc. v. Winston,* 320 Md. 534, 538, 578 A.2d 1177, 1179 (1990); *Kindley v. Governor of Md.,* 289 Md. 620, 625, 426 A.2d 908, 912 (1981). Adopting the interpretation of § 9–736(b) that the petitioner espouses would render, as we have already indicated, that portion of § 9–602(a) defining average weekly wage in terms of the date of the accidental personal injury surplusage and meaningless in any case in which a claim for temporary total disability is reopened. That we do not propose to do.

We conclude that the Commission was not authorized to recalculate, using its revisory powers, the petitioner's average weekly wage to reflect his then current wages. The requirement in § 9–602(a) that average weekly wage be computed on the basis of the claimant's wages at the time of the accidental personal injury is binding on the Commission both initially and on reopening and, thus, may not be avoided under the guise of the Commission's broad and expansive revisory power. Accordingly, the judgment of the Court of Special Appeals must be affirmed.

*JUDGMENT AFFIRMED, WITH COSTS.*