846 A.2d 469

**CLARENCE W. GOSNELL, INC., et al.**

v.

**Marion HENSLEY.**

No. 982, Sept. Term 2002.

Court of Special Appeals of Maryland.

April 8, 2004.

John T. Beamer, II (Tostanoski & Martin, P.A., on the brief), Baltimore, for appellant.

Robert G. Samet (Ashcraft & Gerel, on the brief), Rockville, for appellee.

Panel: BARBERA, GREENE * and CHARLES E. MOYLAN Jr., (Retired, specially assigned) JJ.

BARBERA, Judge.

This case presents the question whether the provision of the Maryland Workers' Compensation Act, requiring the Workers' Compensation Commission to round compensation payments to the next higher dollar, applies to the provision in the same subtitle that subjects permanent total disability payments to an annual cost of living adjustment ("COLA"). For the reasons that follow, we hold that the "rounding up" provision does not apply to yearly COLA payments.

---

* Greene, J., now a member of the Court of Appeals, participated in the conference and decision of this case while a member of this Court; and participated in the adoption of this opinion as a member of this Court by special designation.

## FACTS AND PROCEEDINGS

Marion Hensley, appellee, worked as a heavy equipment operator for appellant, Clarence W. Gosnell, Inc., for approximately 47 years. On September 12, 1990, Hensley injured his back while swinging a sledge hammer at work.

Hensley (hereafter "Claimant") filed a workers' compensation claim against Gosnell, Inc. and its insurer, fellow appellant City Insurance Company (hereafter, collectively, "Employer"). The Workers' Compensation Commission ("Commission") found Claimant's injury to be compensable under the Maryland Workers' Compensation Act ("Act"), Md.Code (1991, 1999 Repl.Vol.), § 9–101 *et seq.* of the Labor and Employment Article.[1] The Commission issued an automatic award on March 20, 1991.

A second hearing was held on May 13, 1997, to ascertain the nature and extent of Claimant's injury. The Commission subsequently issued an order directing Employer to pay Claimant $432.00 per week in permanent total disability compensation.

Because Claimant was found to be permanently and totally disabled, his weekly checks were subject to yearly COLA increases pursuant to § 9–638 of the Act. Employer made no COLA payments to Claimant from 1997 to 2001.

In 2001, Claimant demanded the necessary adjustments, and Employer complied by paying Claimant $5,714.38 in COLA payments retroactive to January 1, 1997. Employer, however, refused to round to the next higher dollar any past and future COLA payments due Claimant.

Believing that annual COLAs are subject to rounding to the next higher dollar, Claimant filed issues of underpayment of COLA benefits with the Commission. He took the position that § 9–604(b) of the Act dictates that rounding up is to be done whenever the Commission computes any "rate of com-

---

1. Unless otherwise indicated, all statutory references in this opinion are to this version of the Labor and Employment Article.

pensation" awarded under Subtitle 6; that the annually computed COLAs provided by § 9–638 come within the ambit of that rounding up provision; and that, consequently, rounding up of each annual COLA is required when determining the amount of Claimant's total compensation.

Following a hearing, the Commission concluded that the COLA is not a "rate of compensation" subject to the requirement of § 9–604(b). The Commission therefore denied Claimant's issues.

Claimant sought review in the Circuit Court for Montgomery County, and the parties filed cross motions for summary judgment. After a hearing, the court granted summary judgment in favor of Claimant, stating: "As I read the statute, [§ 9–604] provides that all compensation awarded shall be subject to the rounding up, so the Court finds that it should be rounded up to the nearest dollar."

## DISCUSSION

### I.

By 1987 Maryland Laws Chapter 239, the General Assembly enacted the COLA provision of the Act. Currently codified at § 9–638, this section was the product of a recommendation by the Governor's Commission to Study the Workers' Compensation System. Its 1987 report states: "The intent of this Commission's recommendation is straightforward: to protect the purchasing power of Permanent Total disabled workers' and survivors' monthly benefits from erosion by inflation."

Section 9–638 provides:

(a) *In general.*—Compensation paid under this Part V [2] of this subtitle is subject to an annual cost of living adjustment.

---

2. Part V of Subtitle 6 of the Act governs benefits for covered employees who are permanently and totally disabled. It is undisputed that Claimant's benefits fall within the scope of Part V.

(b) *Report of change in consumer price index.*—On or before June 30 of each year, the Department of Business and Economic Development shall determine and report to the Commission the rate of change in the Consumer Price Index in the preceding calendar year, using as the Consumer Price Index the lower of:

(1) the Consumer Price Index (all urban consumers, all item index) published by the United States Department of Labor for the Washington, D.C.-Baltimore CMSA; or

(2) the United States city average consumer price index (all urban consumers, all item index).

(c) *Publication of cost of living adjustment.*—(1) On or before July 31 of each year, the Commission shall publish the amount of the cost of living adjustment that shall become effective on January 1 of the following year.

(2) The cost of living adjustment may not exceed 5%.

(d) *Determination of adjustment.*—The compensation payable to a covered employee under this Part V of this subtitle shall be adjusted by:

(1) Multiplying the initial rate of compensation by the cost of living adjustment; and

(2) Adding the product to the compensation, as adjusted, paid during the prior year.

(e) *Reduction due to Social Security benefits.*—(1) If a covered employee who is entitled to compensation under this Part V of this subtitle also receives federal Social Security disability insurance benefits, the adjusted annual compensation paid shall be reduced to the extent necessary to avoid a diminution of the federal Social Security disability insurance benefits.

(2) If federal Social Security law on disability insurance benefits no longer imposes a diminution in the payment of the adjustment in compensation, payments of compensation shall be made to the full extent allowed under this section.

(f) *Payment by Subsequent Injury Fund for violent crime victims.*—Abrogated.

§ 9–638 (2003 Supp.).

Eleven years before enacting § 9–638, the General Assembly enacted the provision of the Act that directs the Commission, when computing the rate of compensation, to round the computed compensation to the next higher dollar. *See* 1976 Md. Laws ch. 357. Now codified at § 9–604, that section reads:

(a) *In general.*—The Commission shall compute all compensation awarded under this title in accordance with the applicable schedule in this subtitle.

(b) *Rounding off.*—In computing the rate of compensation, the Commission shall round off any fractional dollar of compensation to the next higher dollar.

The question before us is whether an annual COLA is a "rate of compensation" to which the rounding up provision of § 9–604(b) applies. Employer argues that the answer to the question is "no," and, consequently, the circuit court erred in granting summary judgment in favor of Claimant on this issue. Employer reasons that COLAs are a "strict mathematical formula based upon a percentage change set forth by the commission yearly." The COLA is not a rate of compensation, argues Employer, but is, instead, simply an accelerator to account for annual inflation. Claimant, of course, disagrees. As Claimant sees it, "the sum found by adding the cost of living adjustment to the initial rate of compensation, itself forms a new weekly 'rate of compensation' within the meaning of the law." We conclude that Employer has the better part of the argument.

## II.

 As we have mentioned, this case is before us by way of a grant of summary judgment. This Court reviews an order granting summary judgment *de novo. Tyma v. Montgomery County*, 369 Md. 497, 504, 801 A.2d 148 (2002); *Candelero v. Cole*, 152 Md.App. 190, 198, 831 A.2d 495 (2003).

Summary judgment is only appropriate when, upon review of the facts and inferences therefrom in the light most favorable to the non-moving party, there is no genuine issue of material fact and the party in whose favor judgment is entered is entitled to judgment as a matter of law. Md. Rule 2–501(e); *Sadler v. Dimensions Healthcare Corp.*, 378 Md. 509, 515, 836 A.2d 655 (2003). Once we have concluded that there is no genuine issue of material fact, we review the trial court's grant of summary judgment to ascertain if it was legally correct. *Jahnigen v. Smith*, 143 Md.App. 547, 555, 795 A.2d 234, *cert. denied*, 369 Md. 660, 802 A.2d 439 (2002).

The issue before us is a question of law, involving the construction of two provisions of the Act and the interplay, if any, between them. In analyzing this question, we are guided by the review standard set forth by the Court of Appeals in *Philip Elecs. N. Am. v. Wright*, 348 Md. 209, 703 A.2d 150 (1997):

> In construing the [Workers' Compensation] Act, as in construing all statutes, the paramount objective is to ascertain and give effect to the intent of the legislature. In interpreting the Act, we apply the following general principles. First, if the plain meaning of the statutory language is clear and unambiguous, and consistent with both the broad purposes of the legislation, and the specific purpose of the provision being interpreted, our inquiry is at an end. Second, when the meaning of the plain language is ambiguous or unclear, we seek to discern the intent of the legislature from surrounding circumstances, such as legislative history, prior case law, and the purposes upon which the statutory framework was based.

*Id.* at 216–17, 703 A.2d 150 (internal citations omitted).

To these general principles of statutory construction the Court of Appeals added: "Last, applying a canon of construction specific to the Act, if the intent of the legislature is ambiguous or remains unclear, we resolve any uncertainty in favor of the claimant." *Id.* at 217, 703 A.2d 150; *accord Harris v. Board of Educ. of Howard County*, 375 Md. 21, 57,

825 A.2d 365 (2003). The Court of Appeals cautioned in *Philip Elecs.,* however, that an appellate court "may not stifle the plain meaning of the Act, or exceed its purposes, so that the injured worker may prevail. Similarly, the Court may not create ambiguity or uncertainty in the Act's provisions where none exists so that a provision may be interpreted in favor of the injured claimant." 348 Md. at 217, 703 A.2d 150 (internal citations omitted); *accord Jung v. Southland Corp.,* 114 Md. App. 541, 548, 691 A.2d 263 (1997), *aff'd,* 351 Md. 165, 717 A.2d 387 (1998).

■■■ We also take into account that appellate courts "are to be guided by the general statutory command that the decision[s] of the Commission [are] entitled to prima facie correctness. A court, therefore, may reverse a commission ruling only upon a finding that its action was based upon an erroneous construction of the law or facts." *Martin v. Beverage Capital Corp.,* 353 Md. 388, 402, 726 A.2d 728 (1999) (citations and internal quotation marks omitted). We thus give a degree of deference to the Commission in its interpretation of the statutes it administers. *See id.* at 421, 726 A.2d 728 (adopting the Commission's interpretation and administration of § 9–681(d) (2003 Supp.), "in deference to the Commission's interpretation of the statute").

### III.

■■■ The rules of statutory construction outlined above require us first to examine the plain language of the two statutes in question, because that is the principal source of legislative intent. We look first to § 9–604, which contains the rounding up provision at issue in this case.

Section 9–604 is entitled "Computation of compensation," and directs the Commission to compute the compensation that is awarded a claimant under the Act. Subsection (a) of the statute provides that "[t]he Commission shall compute all compensation awarded under this title in accordance with the applicable schedule in this subtitle." Subsection (b) further directs the Commission, once it has computed the appropriate

rate of compensation, to round off any fractional dollar to the next higher dollar.

The question whether § 9–604 applies to COLAs turns on the subsidiary question whether a COLA is a rate of compensation, as that phrase is used in subsection (b) of the statute. For several reasons, we conclude that it is not.

We note preliminarily that, although the term "compensation" is defined in the Act as "the money payable under this title to a covered employee or the dependents of a covered employee," *see* § 9–101(e)(1), the phrase "rate of compensation" is not defined in the Act. We must, therefore, read the phrase in the context in which it is employed. *See Price v. State,* 378 Md. 378, 388, 835 A.2d 1221 (2003) (cautioning that, in construing a statute, the court may not read the statute divorced from its textual context, for " '[a]dherence to the meaning of words does not require or permit isolation of words from their context' ") (citation omitted). Reading "rate of compensation" in context requires that we look back to § 9–604(a), which directs the Commission to "compute all compensation awarded under this title in accordance with the *applicable schedule* in this subtitle." (Emphasis added.)

"Schedule," as that term is used in § 9–604(a), refers to the statutorily set formula for calculating the amount of compensation for a claimant's injury or disability. *See* § 9–615 (temporary partial disability); § 9–621 (temporary total disability); § 9–628 (2003 Supp.), §§ 9–629 and 9–630 (permanent partial disability); and § 9–637 (permanent total disability). All of these formulae are tied to the "average weekly wage" defined in § 9–602 (2003 Supp.). *See Jung v. Southland Corp.,* 351 Md. 165, 173 n. 8, 717 A.2d 387 (1998).[3]

If, once computed by reference to the "applicable schedule," the compensation includes a fraction of a dollar, then the Commission is directed, pursuant to § 9–604(b), to round the

---

**3.** The Court of Appeals further noted in *Jung v. Southland Corp.,* 351 Md. 165, 173 n. 8, 717 A.2d 387 (1998), that "[o]nly in the case of permanent total disability awards has the Legislature provided for cost of living adjustments."

fractional dollar to the next higher dollar. This amount becomes the rate of compensation due the employee.

Unlike the provisions cited above, the COLA statute is not a "schedule" upon which the Commission is directed to base its calculation of the rate of compensation due a disabled employee. It follows that, at least insofar as the text of § 9–604 itself is concerned, COLAs do not come within the meaning of the "rate of compensation" the Commission is charged with computing.

Examination of § 9–638, the COLA provision, yields the same result. This section provides that COLAs are to be determined annually by the Department of Business and Economic Development, and then reported to the Commission. *See* § 9–638(b) ("On or before June 30 of each year, the Department of Business and Economic Development shall determine and report to the Commission the rate of change in the Consumer Price Index."). On receipt of this information, the Commission publishes each year the amount of the COLA that will become effective at the beginning of the following year. *See* § 9–638(c)(1) ("On or before July 31 of each year, the Commission shall publish the amount of the cost of living adjustment that shall become effective on January 1 of the following year.").[4]

Section 9–638 does not in any way direct the Commission to determine the adjusted compensation due the employee. Section 9–638 differs, in this regard, from other provisions in Subtitle 6, including § 9–604 itself, that *do* direct the Commission to determine the compensation due. *See* § 9–606(a) (providing that, "[i]n a claim involving a minor who is employed illegally under State law, the Commission may double the amount of compensation"); § 9–607(a) (providing that "[t]he Commission may not award compensation to a prisoner who is a covered employee ... until the prisoner is dis-

---

4. The Commission publishes an "Informational Notice" concerning the annual COLA. That notice is found on the Commission's website, http://www.wcc.state.md.us/PDF/Rates/cola.pdf, and currently lists the annual percentage increases for years 1988 through 2004.

charged"); § 9–608(a) (providing that "[t]he Commission shall determine the percentage that an occupational disease contributed to the death or disability of a covered employee" under certain circumstances); § 9–610.1 (2003 Supp.) (providing that the Commission may offset an award against other benefits).

In addition, § 9–638 nowhere provides that COLAs are subject to rounding up to the next higher dollar, nor is there any express reference in § 9–638 to the rounding up provision of § 9–604(b). *Compare* § 9–638 *with* 5 U.S.C. § 8146a(b) (providing, in the Federal Employees' Compensation Act's COLA statute, that "[t]he regular periodic compensation payments after [cost of living] adjustment under this section *shall be fixed at the nearest dollar*") (emphasis added).

Similarly, nothing in the language of § 9–638 suggests that the COLA is a "rate of compensation." To the contrary, the COLA is precisely that—an annual *adjustment* to the rate of compensation due a permanently and totally disabled employee. *See* § 9–638(d) (describing the manner in which "the compensation payable to the covered employee shall *be adjusted*") (emphasis added).

Moreover, had the General Assembly intended that COLAs be rounded up to the next higher dollar, it knew precisely how to accomplish that end. In two sections contained in other subtitles of the Act, the legislature included language requiring fractional dollars to be rounded off to the nearest whole dollar. *See* § 9–806(b) (2003 Supp.) (providing for rounding off of assessments imposed on certain employers and their insurers payable to the Subsequent Injury Fund); § 9–1007(c) (providing for rounding up of assessments imposed on certain employers and their insurers payable to the Uninsured Employers' Fund). We note that other assessments imposed on employers under Subtitle 10 do not require rounding to the nearest whole dollar. *See* § 9–1005 (providing for assessments against uninsured employers); § 9–1008 (providing for assessments when the Commission determines that compensation is not awarded or is abated).

We glean from this that the legislature intended to require rounding fractional dollars under some provisions of the Act, but not others. This, in turn, suggests that the legislature intentionally omitted from § 9–638 any language indicating that COLAs are to be rounded up to the next higher dollar.

In sum, §§ 9–604 and 9–638 are devoid of any indication that COLAs are subject to rounding up to the next higher dollar. As we have discussed, § 9–604 provides for rounding up of the "rate of compensation" the Commission is directed to compute by resort to the applicable "schedule." Section 9–638 is not a "schedule," nor is a COLA a "rate of compensation" as that term is used in § 9–604(b). Furthermore, § 9–638 itself does not address rounding up. And, unlike § 9–604, § 9–638 does not direct the Commission to compute the adjusted compensation due.

█ The principles of statutory construction command that we " 'neither add nor delete words in order to give the statute a meaning not otherwise communicated by the language used.' " *Harris*, 375 Md. at 31, 825 A.2d 365 (citation omitted); see *Mutual Life Ins. Co. of New York v. Insurance Comm'r for the State of Maryland*, 352 Md. 561, 573, 723 A.2d 891 (1999) (explaining that an appellate court will not, " ' "under the guise of construction, . . . supply omissions . . . in the statute" ' ") (citations omitted). We shall not read into either § 9–604 or § 9–638 a meaning that is not there or surmise an intent on the part of the legislature that would require us to ignore language in each statute suggesting a contrary intent. *See Bank of America v. Stine*, 379 Md. 76, 86, 839 A.2d 727 (2003).

We conclude that §§ 9–604 and 9–638, by their plain language, unambiguously express the legislative purpose that the annual COLA provided by § 9–638 is not subject to the rounding up provision of § 9–604(b). Having reached that conclusion, "our task of interpretation is complete." *Martin*, 353 Md. at 399, 726 A.2d 728. We, therefore, do not look to whether either statute presents any legislative history that might indicate a contrary construction.

We may, however, consult the legislative history as a "confirmatory process." *Mayor and City Council of Baltimore v. Chase,* 360 Md. 121, 131, 756 A.2d 987 (2000). The legislative history of §§ 9–604 and 9–638 is scant, yet to the limited extent it illuminates the issue before us, it confirms our conclusion that the rounding up provision of § 9–604 does not apply to COLAs. The only inclusion in the history of § 9–638 that bears at all on the subject is found in the Report of the Governor's Commission to Study the Workers' Compensation System. There, as we have mentioned, the Governor's Commission explained that the intent of its recommended COLA provision is "to protect the purchasing power of Permanent Total disabled workers' and survivors' monthly benefits from erosion by inflation."

■ COLAs are virtually universally understood, in the context of workers compensation and in other contexts, to have the purpose of keeping workers' compensation benefits level with the rate of inflation. *See, e.g., Brickwood Contractors, Inc. v. United States,* 49 Fed. Cl. 148, 164 (2001) (noting in a case involving a claim for attorney's fees under the Equal Access to Justice Act that a COLA offsets the decrease in value of attorney's fees due to inflation), *rev'd on other grounds,* 288 F.3d 1371 (Fed.Cir.2002), *cert. denied,* 537 U.S. 1106, 123 S.Ct. 871, 154 L.Ed.2d 775 (2003); *Director, Office of Workers' Comp. Programs, United States Dep't of Labor v. Bath Iron Works Corp.,* 885 F.2d 983, 985 (1st Cir.1989) (explaining that the Longshoremen's and Harbor Workers' Compensation Act provides automatic COLAs "to protect beneficiaries from inflation"), *cert. denied,* 494 U.S. 1091, 110 S.Ct. 1838, 108 L.Ed.2d 967 (1990); *Powhatan Corr. Ctr./Commonwealth v. Mitchell–Riggleman,* 40 Va.App. 491, 579 S.E.2d 696, 697 (2003) ("The purpose of the COLA provision is to ensure that the value of a compensation award is not lessened due to inflation."). Rounding COLA payments to the next higher dollar would be at odds with the legislative purpose of such adjustments—to protect against the *erosion* of benefits due to inflation.

In reaching our conclusion that COLAs are not subject to rounding up to the next higher dollar, we have not overlooked that, to the extent the Act is ambiguous, it should be construed "as liberally in favor of injured employees as its provisions will permit in order to effectuate its benevolent purposes." *Harris*, 375 Md. at 57, 825 A.2d 365 (internal quotation marks and citations omitted). We are equally mindful, however, of the Court of Appeals' caution that we may not "create ambiguity or uncertainty in the Act's provisions where none exists so that a provision may be interpreted in favor of the injured claimant." *Philip Elecs.*, 348 Md. at 217, 703 A.2d 150. We shall not read into §§ 9–604 and 9–638 an ambiguity that is not there, simply so that we might apply the tenet that any ambiguity must be resolved in favor of the claimant.

Moreover, we recognize that the Commission is entitled to some deference in its interpretation of the statute it administers. *Martin*, 353 Md. at 421, 726 A.2d 728. We agree with the Commission's interpretation of §§ 9–604(b) and 9–638 that COLAs are not a rate of compensation to which the rounding up provision of § 9–604(b) applies. The judgment of the circuit court to the contrary is therefore reversed.

**JUDGMENT OF THE CIRCUIT COURT FOR MONT-GOMERY COUNTY REVERSED.**

**COSTS TO BE PAID BY APPELLEE.**