912 A.2d 56

PRISON HEALTH SERVICES, INC.

v.

BALTIMORE COUNTY, Maryland.

No. 2287, Sept. Term, 2005.

Court of Special Appeals of Maryland.

Dec. 6, 2006.

**4**

Andrew D. Levy (Stuart O. Simms, Shelly Marie Martin, on brief), Baltimore, for appellant.

Thomas H. Bostwick (John E. Beverungen, County Atty., on brief), Towson, for appellee.

Panel SALMON, KENNEY, DEBORAH S. EYLER, JJ.

DEBORAH S. EYLER, J.

Baltimore County ("the County"), the appellee, brought an action for declaratory and injunctive relief against Prison Health Services ("PHS"), the appellant, seeking a determination that the County had timely exercised an option to renew a contract between the parties. On summary judgment, the Circuit Court for Baltimore County interpreted the operative contract language and declared that the County indeed had exercised its option to renew in a timely manner.

PHS challenges that ruling on appeal, presenting one question for review, which we have rephrased:

Did the circuit court err in ruling that, on the undisputed material facts, the County timely exercised its option to renew its contract with PHS, as a matter of law? [1]

For the following reasons, we shall reverse the circuit court's judgment and remand the case to that court for further proceedings.

---

1. The question as posed by PHS is:
 "The Contract between PHS and the County was for a fixed five-year term, which the County had the option to renew for up to three additional two-year terms. The County failed to exercise the first of its options until after the Contract expired. Was the County's attempted post-expiration exercise of its option effective?"

## FACTS AND PROCEEDINGS

On July 1, 2000, the County and PHS entered into a five-year contract for PHS to provide health care services to inmates at two County jails ("the Contract"). The Contract defines its "Term" as follows:

**3.1 This Agreement shall be effective on the later of July 1, 2000 or the date on which it has been fully executed by Baltimore County and shall continue through 06/30/2005 (hereinafter defined as the "Initial Term"), at which time the County may exercise its option to renew set forth in Paragraph 3.2 below, unless sooner terminated pursuant to Paragraphs 5 and 7 hereof.**

(Bold in original.) The renewal provision states:

**3.2 This Agreement may be renewed for up to three (3) additional two-year terms on the same terms and conditions set forth herein.** Unless set forth in a written amendment, the compensation and manner of payment set forth in Paragraph 2 shall remain as is including the maximum amount of compensation available hereunder. In the event any renewal changes the terms and conditions set forth herein, the approval of the Baltimore County Council may be required.

(Bold in original.) In addition, the Contract states, at section 22, that "[t]ime is of the essence with respect to performance of the terms and conditions of this Agreement."

On July 1, 2005, counsel for PHS faxed a letter to the administrator for the Baltimore County Bureau of Corrections, stating, in relevant part:

The County failed to exercise its option to renew the Contract by June 30, 2005 and, therefore, the County's option to renew the Contract has lapsed. For the reasons set forth below, the Contract is complete and PHS has no legal obligation to continue performance.

The letter went on to say that PHS would continue to provide services to the inmates in affected facilities through July 31,

2005, "as a professional courtesy and to protect the County and its inmates from a lapse in health-care services."

Later that same day, the County, also by counsel, faxed to PHS a document entitled "Services Term Contract Amendment," which states in part:

AMEND TO EXERCISE THE FIRST OF THREE TWO-YEAR RENEWAL OPTIONS, FROM 07/01/05 TO 06/30/07.

The amendment also increased the unit prices for certain Contract line items.

Also that same day, the County responded to PHS's letter, stating:

[P]lease be advised that Baltimore County disagrees completely with the assertions in your letter and, in particular, that the current Contract between PHS and the County has expired and that PHS has no legal obligation to continue performance.

On the contrary, the Contract between PHS and the County continues to be in full force and effect under the terms and conditions of the Contract dated July 1, 2000, including without limitation, the services outlined in that Agreement to be performed by PHS.

Two weeks later, in the Circuit Court for Baltimore County, the County filed an action for declaratory and injunctive relief against PHS. PHS filed a timely counterclaim and a motion to dismiss or for summary judgment. PHS argued that the language of the Contract clearly required the County to exercise its renewal option, if at all, no later than June 30, 2005.

The County opposed PHS's motion and filed its own motion for summary judgment. It argued that the language of the Contract clearly allowed the County to exercise its renewal option in some reasonable time before or immediately after June 30, 2005.[2]

---

**2.** The County also argued, alternatively, that it had exercised the renewal option by its conduct prior to June 30, 2005, when it and PHS

The motions came on for a hearing before the circuit court on November 14, 2005. After counsel made their arguments, the court ruled from the bench, granting summary judgment in favor of the County. The court reasoned that the phrase "through 6/30/05 [. . .], at which time" means within a reasonable time "after 6/30/05," *i.e.,* "thereafter." It concluded that, because July 1, 2005, was a reasonable time after June 30, 2005, being the very next day, the County had timely exercised its renewal option.[3]

■ After the circuit court entered a written order, PHS noted a timely appeal to this Court.[4]

## DISCUSSION

■ The sole issue properly before us for decision is whether the County timely exercised its option to renew the Contract when it faxed a written renewal amendment to PHS on July 1, 2005. As already quoted, the Contract states that its Initial Term would continue "through 06/30/05 [. . .], at which time the County may exercise its option to renew." PHS maintains that this language is unambiguous and means that the County could exercise its renewal option up through and

---

were engaged in negotiations over compensation and staffing levels for the Contract term beginning July 1, 2005. Staffing levels had become an issue because, during the Initial Term, the County had enlarged one of its jails. Compensation increases in accordance with the Consumer Price Index were permitted, but not required, under the Contract.

3. The court did not address the County's alternative argument, that it had exercised the renewal option by its conduct, prior to June 30, 2005.

4. The court's order stated only that summary judgment was granted in favor of the County. It did not declare in writing the rights of the parties, as a declaratory judgment order should. *Allstate Ins. Co. v. State Farm Mut. Auto. Ins. Co.,* 363 Md. 106, 117 n. 1, 767 A.2d 831 (2001); *Harford Mutual Ins. Co. v. Woodfin,* 344 Md. 399, 414–15, 687 A.2d 652 (1997). Because, on the record, the circuit court judge explained the reason for his summary judgment ruling and declared the rights of the parties, and his oral ruling was transcribed, we have been able, on review, to see in writing a declaration of the parties' rights. Upon remand, the circuit court should amend the summary judgment order of November 22, 2005, by attaching the transcript of the court's ruling to it.

**8**

including June 30, 2005, but no later. PHS makes the fall-back argument that, if the pertinent Contract language is ambiguous, it should be construed against the County, as the drafter of the Contract.

The County agrees that the pertinent Contract language is unambiguous, but, not surprisingly, argues that it does not mean what PHS claims it means. The County maintains, as it did below, that the language in question allowed it to exercise its renewal option within a reasonable "interval of time near or after" June 30, 2005, which included July 1.[5]

We review a circuit court's decision to grant a motion for summary judgment *de novo*. *Tyma v. Montgomery County*, 369 Md. 497, 504, 801 A.2d 148 (2002); *Clarence W. Gosnell, Inc. v. Hensley*, 156 Md.App. 224, 230, 846 A.2d 469 (2004). Summary judgment should only be granted when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. *Miller v. Bay City Prop. Owners Ass'n, Inc.*, 393 Md. 620, 631, 903 A.2d 938 (2006). Md. Rule 2–501(e); *Bradley v. Fisher*, 113 Md. App. 603, 610, 688 A.2d 527 (1997). Whether there is a genuine dispute of material fact is a question of law. If we determine that there is not a genuine dispute of material fact, we then decide, also as a matter of law, whether the ruling was legally correct. *Beatty v. Trailmaster Products, Inc.*, 330 Md. 726, 737, 625 A.2d 1005 (1993); *Clarence W. Gosnell, supra*, 156 Md.App. at 231, 846 A.2d 469.

We already have recited the facts material to the question whether the County's July 1, 2005 written amendment was a timely exercise of its renewal option. These facts are undisputed. The sole issue on summary judgment review, then, is whether, under the language of the Contract, July 1, 2005 was a day too late for the County to exercise its renewal option, as a matter of law.

---

**5.** Alternatively, the County argues that, in fact, it exercised the renewal option before the end of the Initial Term, by its conduct during the Initial Term.

 Maryland follows the objective law of contracts. *Taylor v. NationsBank, N.A.*, 365 Md. 166, 178, 776 A.2d 645 (2001). As the Court of Appeals explained in *Gen. Motors Acceptance Corp. v. Daniels*, 303 Md. 254, 261, 492 A.2d 1306 (1985):

> A court construing an agreement under this [objective] test must first determine from the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time it was effectuated. In addition, when the language of the contract is plain and unambiguous there is no room for construction, and a court must presume that the parties meant what they expressed. In these circumstances, the true test of what is meant is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant. Consequently, the clear and unambiguous language of an agreement will not give away to what the parties thought that the agreement meant or intended it to mean.

 Whether contract language is ambiguous also is a question of law, which we review *de novo*. *United Servs. Auto Ass'n v. Riley*, 393 Md. 55, 79, 899 A.2d 819 (2006). "A written contract is ambiguous if, when read by a reasonably prudent person, it is susceptible of more than one meaning." *Calomiris v. Woods*, 353 Md. 425, 436, 727 A.2d 358 (1999). When contract language is ambiguous, its meaning becomes a question of fact and extrinsic evidence may be considered to determine the intent of the parties. *Beale v. Am. Nat'l Lawyers Ins. Reciprocal*, 379 Md. 643, 658, 843 A.2d 78 (2004) (citing *Bushey v. N. Assurance Co. of America*, 362 Md. 626, 632, 766 A.2d 598 (2001)).

 An "option" is a type of unilateral contract. *See Foard v. Snider*, 205 Md. 435, 446, 109 A.2d 101 (1954); *Coleman v. Applegarth*, 68 Md. 21, 27, 11 A. 284 (1887). It is a "continuing offer to [enter into a contract] during the duration [of the option] which on being exercised by the optionee becomes a binding and enforceable contract." *Straley*

*v. Osborne,* 262 Md. 514, 521, 278 A.2d 64 (1971) (quoting *Diggs v. Siomporas,* 248 Md. 677, 681, 237 A.2d 725 (1968)). An option only is properly exercised if the exercise is "unconditional and in exact accord with the terms of the option." *Foard, supra,* 205 Md. at 446, 109 A.2d 101. In an option contract, time is of the essence, even if the contract does not expressly say so. *Green Manor Corp. v. Tomares,* 266 Md. 472, 473, 295 A.2d 212 (1972); *Maryland City Realty v. Vogts,* 238 Md. 290, 304, 208 A.2d 701 (1965); *Foard, supra,* 205 Md. at 446, 109 A.2d 101. The reason an option must be exercised precisely as its terms require, and that time always is of the essence in an option contract, is that, by exercising the option, its holder is accepting the continuing offer, through performance. 1 Richard A. Lord, *Williston on Contracts,* § 5:18, at 738 (4th ed.1990). The parties must be able to know whether the continuing offer has been accepted and a new contract has been formed.

There are no Maryland cases interpreting precisely the same contract language at issue here. In *Canary v. Wagner,* 191 Md. 413, 62 A.2d 257 (1948), however, the Court of Appeals construed somewhat similar language in a residential lease. The initial term of the lease ran for four and half years and, unless terminated by either party at the end of that period, would continue to run from year to year "with all its provisions and covenants" in force. *Id.* at 414, 62 A.2d 257. The lease included a purchase option that granted the lessee "the right to redeem [the property] at 6% or ($2500.00) *at the expiration of the above four and a half years term* mentioned." *Id.* at 415, 62 A.2d 257. (Emphasis added.)

More than ten years after the initial lease term expired, but while the lease still was in effect, the lessee's assignee attempted to exercise the purchase option. The Court of Appeals was called upon to decide the reasonable meaning of the option language, from the standpoint of the parties to the lease. The Court framed the issue as "whether the parties intended the redemption to take place at that time [the time of the expiration of the initial term], or did they mean at any

time *after* that time." *Id.* at 417, 62 A.2d 257. (Emphasis in original.)

The Court concluded that a reasonable landlord and tenant would not have intended to create an option to purchase the leased premises that was indefinite in time. Rather, in negotiating such a lease, they would have included the language in question for the very purpose of fixing the time when the purchase option could be exercised. Therefore, the parties only reasonably could have intended that language to mean that the purchase option had to be exercised, if at all, at the end of the initial four and one-half year term, and not thereafter. Moreover, and of particular significance to the case at bar, the Court held that the phrase "at the expiration of" was unambiguous, as it plainly meant the last day of the initial term—not some reasonable time after that. (Indeed, the Court noted that the lessee's right to exercise the purchase option did not even attach until the last day of the initial lease term.)

Our research has not revealed any cases from other jurisdictions interpreting language identical to the option renewal language in the parties' Contract. As was the issue in *Canary,* most of the cases from outside Maryland that address somewhat similar language deal with options in leases. A majority of courts interpreting language akin to that used here have held that an option to renew must be exercised, if at all, during the initial term of the lease. *See Norton v. McCaskill,* 12 S.W.3d 789, 794 (Tenn.2000) ("when a lease stipulates that an option to renew must be exercised 'at the end of' or 'at the termination of' the lease, the lessee must exercise the option on or before the day the original lease term expires."); *Abell v. Bishop,* 86 Mont. 478, 483, 284 P. 525 (Mont.1930) (the word "at" in the phrase "at the expiration of" requires action "within a reasonable time before, not after" the end of a lease period); *I.X.L. Furniture & Carpet Installment House v. Berets,* 32 Utah 454, 465, 91 P. 279 (Utah 1907) ("[t]he phrase 'at the expiration' therefore meant ..., at a point of time at or before the old term was expiring, and not after it had actually expired and passed."); *Blakeslee v. Da-*

*voudi,* 54 Or.App. 9, 13, 633 P.2d 857 (Or.Ct.App.1981) ("[t]he exercise of an option to renew a lease must, absent unusual circumstances, occur prior to the expiration of the lease"); *Robertson v. Drew,* 34 Cal.App. 143–45, 166 P. 838 (Cal.Ct. App.1917) ("[w]here one desires to avail himself of the privilege of renewing or extending a lease, he must exercise that right before the expiration of the original term").

Other courts have taken a minority view that similar language means that a renewal option may be exercised within a reasonable time after the end of the initial lease term. *See Caito v. Ferri,* 44 R.I. 261, 263, 116 A. 897 (R.I.1922) (an option to renew "at the termination" of the lease was exercisable within a reasonable time after the end of the lease term); *Central Guar. Co. v. Nat'l Bank of Tacoma,* 137 Wash. 24, 30, 241 P. 285 (Wash.1925) (construing the phrase "at the end of 1st year" to mean within a reasonable time thereafter); *see also Rogers v. Burr,* 97 Ga. 10, 25 S.E. 339 (1895) (construing the phrase "at the expiration of three years" to mean within a reasonable time thereafter).

At least one state court has found the word "at" to be ambiguous. *Texas Co. v. Blackmon–Scarbrough, Inc.,* 74 Ga. App. 183, 185, 38 S.E.2d 890 (1946) (interpreting the language "subject to termination by lessee or lessor at the end of the fifth year upon ninety-days' written notice").

We conclude that the language at issue in the Contract in this case is unambiguous and that it required the County to exercise its renewal option, if at all, no later than June 30, 2005.

To be sure, as the County argues, the word "through," when used in reference to time, can mean until the end of, MERRIAM WEBSTER COLLEGIATE DICTIONARY, at 1303 (11th ed.2003) ("through" defined to mean: "used as a function word to indicate a period of time: as ... b: from the beginning to the end of"); and if one ascribes that meaning to it, it is possible to read the phrase in question to mean that the renewal option had to be exercised, if at all, on the stroke of midnight marking the end of June 30 and the beginning of July 1. The

County and PHS agree that neither they nor any reasonable person in their position would have understood the words at issue to have that meaning. Such an interpretation of the option language would make the option difficult, if not impossible, to exercise, and cannot possibly have been the parties' objective.

People in the position of the parties in this case—negotiating a business contract for necessary health services for a prison population—would need to know, with certainty, whether their agreement had ended upon the expiration of the Initial Term or whether it was continuing for a new, two-year term. It does not stand to reason, therefore, that the parties intended to create an option without a firm deadline, but instead with a vague, indefinite, and unpredictable exercise date. The "reasonable time thereafter" meaning the County advocates would leave the parties uncertain, after the option had been exercised, as to whether it was effective, unless it was exercised on or before June 30. Would an exercise three days after June 30 be reasonable, and thus timely and effective? One week? Three weeks? Two months? (The uncertainty also could leave the prison population potentially without necessary health care.) All that would be certain would be that litigation would follow. This is why an indefinite time for exercising a renewal option is antithetical to the nature of an option contract.

As the County points out, it is a general principle of contract law that when a contract calls for performance but does not specify a time, a reasonable time will be implied. The principle rests upon a presumption that the parties intended for performance to take place within a reasonable time. *USEMCO, Inc. v. Marbro Co., Inc.,* 60 Md.App. 351, 365, 483 A.2d 88 (1984). The principle does not apply here, however, because the parties did not fail to include in their Contract a time for the County to exercise its renewal option. The phrase "through 6/30/2005 [ . . . ], at which time" was meant to spell out when the County could exercise its renewal option. *See* Bryan A. Garner, A Dictionary of Modern Legal Usage,

at 91 (2nd ed.1995) (commenting that, " 'at which time is invariably prolix for *when* ' " (emphasis in original)). The very language at issue defines the time for the County to exercise its option to renew, if it so chooses.

Here, the Contract states that time is of the essence and contains an option to renew for which time necessarily is of the essence. The only definite time in the Contract that has a bearing upon renewal is the Contract's expiration date: June 30, 2005. The parties to this case, like the parties in the *Canary* case, set about to designate a time for the County to exercise the option to renew, if it wished to do so. The language they used, "through 6/30/2005 [which was the last day of the Initial term] [. . .], at which time," is closest in meaning to the "at the expiration of" language used by the parties in *Canary*. *Canary* and the weight of authority in other jurisdictions support an interpretation of the phrase "at which time" as meaning, in the context of this Contract, no later than the last day of Initial Term–June 30, 2005. This is so because the Contract clearly states that it was to continue "through 06/30/05" and, thus, expired on that date absent any action by the County to exercise its option to renew.

Moreover, reasonable people in the parties' position would not have expected, when they negotiated this Contract language, that when the Initial Term ended and there was no longer any Contract in existence, they nevertheless would occupy a limbo-like business relationship, of undefined duration, during which their already-expired Contract could be brought back to life. Indeed, absent express savings language, it does not make sense that an option to renew a contract, contained in the same contract, which itself has a definite expiration date, could survive that expiration date. The right to renew exists only because the contract grants it, and therefore must expire when the contract expires, unless the contract itself provides that the renewal right survives the contract's expiration. In this case, there was no such provision in the parties' Contract. For that reason, the renewal option language cannot reasonably be read to create a renewal

period of unspecified length extending beyond the end of the Initial Term.[6]

Accordingly, the circuit court erred in ruling that, on the undisputed material facts, and as a matter of law, the County timely exercised its renewal option when it faxed a written renewal amendment to PHS on July 1, 2005.[7]

**JUDGMENT REVERSED. CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE COUNTY FOR FURTHER PROCEEDINGS. COSTS TO BE PAID BY THE APPELLEE.**

---

**6.** We recognize that in this case the option exercise was but a day late, and therefore our holding may seem harsh. As the Court of Appeals has said in the context of notice, however:

> The difference of one day in the giving of notice is small, in one view, but it is the distance across a necessary boundary in relations under [a] contract, and must be taken as decisive, or there can be no boundary."

*Brown Method Co. v. Ginsberg*, 153 Md. 414, 418, 138 A. 402 (1927).

**7.** In their briefs, the parties present arguments about the alternative basis the County offered in support of its motion for summary judgment: that it exercised the renewal option by its conduct prior to June 30, 2005. When more than one ground for summary judgment has been raised in the circuit court, and the court grants summary judgment on one ground, without addressing any other ground, we review the court's decision based on the ground relied upon, only. The sole exception to that principle of appellate review is when the circuit court would have had no discretion but to grant summary judgment on the other, unaddressed, ground. *Neal v. Wells Fargo Home Mortgage, Inc.*, 168 Md.App. 747, 752, 899 A.2d 208 (2006). The exception is a rarity, and does not apply here.

Our disposition of the single issue properly before us on appeal serves only to cure the lower court's incorrect declaration of the parties' rights. On remand, the lower court must declare the rights of the parties anew, after conducting the necessary proceedings to allow it to do so.