**MJ HARBOR HOTEL, LLC, Plaintiff,**

v.

**McCORMICK & SCHMICK RESTAURANT CORP., et al., Defendants.**

**Civil No. WDQ–07–2368.**

United States District Court,
D. Maryland,
Northern Division.

Feb. 18, 2009.

**614**

Francis R. Laws, Matthew James Gallagher, Michael S. Libowitz, Thomas and Libowitz PA, Baltimore, MD, for Plaintiff.

Lawrence Paul Fletcher–Hill, Gordon Feinblatt Rothman Hoffberger and Hollander LLC, Baltimore, MD, for Defendants.

## MEMORANDUM OPINION

WILLIAM D. QUARLES, JR., District Judge.

MJ Harbor Hotel, LLC ("Harbor Hotel") sued McCormick & Schmick Restaurant Corp. and McCormick & Schmick Acquisition Corp. ("Defendants") for breach of a lease agreement and for a declaratory judgment. Pending are: (1) Harbor Hotel's motion for partial summary judgment, (2) the Defendants' cross-motion for summary judgment, and (3) Harbor Hotel's motion to strike the Defendants' expert report and testimony. For the following reasons, the motions will be denied.

## I. Background

On July 16, 1997, McCormick & Schmick ECP III, a predecessor of McCormick & Schmick Restaurant Corp., contracted with The Inn at Pier 5 Limited Partnership, a predecessor of Harbor Hotel, to lease space in the Pier 5 complex ("Pier 5") located at 711 Eastern Avenue, Baltimore Maryland. Am. Compl. ¶¶ 7, 14. The

space was to be used for "[t]he operation of an upscale, sit-down, full service white tablecloth seafood restaurant, together with accompanying bar/alcoholic beverage service...." Pl. Mot. Summ. J. Ex. 1 § 1.23. Sometime before 2001, Harbor Hotel became the landlord under the 1997 lease. *Id.* at ¶ 20. On August 17, 2001, McCormick & Schmick Restaurant Corp. became the tenant under the lease. *Id.* at ¶ 22. McCormick & Schmick Acquisition Corp. is now the guarantor of the tenant's obligations under the lease. *Id.*

Section 10.5 of the 1997 lease restricts the tenant from directly or indirectly operating a restaurant "of a similar kind" within a 10 mile radius of the leased property. Pl. Mot. Summ. J. Ex. 1 § 10.5. Section 10.5 states that "any restaurant operating under the name of 'McCormick and Schmick' and/or whose menu consists of 50% or more seafood entree items shall be deemed 'another restaurant of a similar kind'..." *Id.*

Section 39.1.2 of the 1997 lease defines a Default as any failure by the tenant to perform a "covenant, agreement, obligation, or condition ... other than the payment of Rent or Additional Rent" after the landlord has provided notice of the default and the tenant has failed to cure within 30 days. *Id.* at § 39.1.2. Under § 10.5 of the lease, rent includes a percentage of the income of a similar restaurant operated by McCormick & Schmick. *Id.* at § 10.5.

In March 2003, McCormick & Schmick Restaurant Corp. contracted with Harbor Place Associates Limited Partnership, an affiliate of the Rouse Companies, to lease space in the Pratt Street Pavilion of Harborplace. Harborplace Lease. That space was to be used for "the operation of a full service, medium to better quality M & S Grill restaurant serving lunch and dinner and offering menu items substantially similar to those offered in the majority of M & S Grill restaurants." Pl. Mot. Summ. J. Ex. 4 § 1.1.F. In October, 2003, McCormick & Schmick Restaurant Corp. opened an M & S Grill restaurant in Harborplace. Def. Mot. Summ. J. at 5. The Harborplace M & S Grill is located within 10 miles of the Pier 5 McCormick & Schmick.

On July 31, 2007, Harbor Hotel sued the Defendants in the Circuit Court for Baltimore City. Notice of Removal ¶ 1. On September 5, 2007, the Defendants removed the case. On January 3, 2008, the Plaintiff filed its Amended Complaint seeking a declaration that Harbor Hotel is owed damages recoverable under § 10.5 of the lease. On July 3, 2008, Harbor Hotel moved to strike the Defendants' expert report and testimony. Paper No. 33. On October 17, 2008, Harbor Hotel moved for partial summary judgment. Paper No. 50. On November 6, 2008, the Defendants filed a cross-motion for summary judgment. Paper No. 54. The motions were heard on February 11, 2009.[1]

---

1. After the motions hearing, the Defendants filed a motion for leave to file a post-hearing memorandum. Although the motion will be granted, no reply is necessary.

In this memorandum, the Defendants repeat their argument that § 10.5 of the 1997 lease is a non-monetary provision. The Defendants also contend—for the first time—that a requirement for filing any suit under § 39.2.4 is a finding of Default under § 39.1.

Section 39 of the lease defines defaults and remedies. Section 39.1.2 states notice and

opportunity to cure provisions for all defaults "other than payment of Rent or Additional Rent." Harbor Hotel reasonably argues that the notice requirement of 39.1.2 does not apply to the rent obligation generated by sales from a "similar" restaurant that are to "be included in the computation of the Annual Percentage Rent" defined in § 10.5 and collectible under § 10.4. As the Amended Complaint seeks, *inter alia,* a declaration of the amount of Additional Rent recoverable under § 10.5 of the lease, the Defendants' failure to

## II. Analysis

### A. Harbor Hotel's Motion for Partial Summary Judgment

#### 1. Standard of Review

Under Rule 56(c), summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The Court must view the facts and reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (*quoting United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) (per curiam)). The opposing party, however, must produce evidence upon which a reasonable factfinder could rely. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. A mere "scintilla" of evidence is insufficient to preclude summary judgment. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

#### 2. Is the M & S Grill "Operating under the name 'McCormick & Schmick'"?

Harbor Hotel contends that M & S Grill is operating under the name "McCormick & Schmick," in violation of § 10.5 of the 1997 lease, because: (1) "M & S" is an "obvious" reference to "McCormick & Schmick;" (2) the Defendants list M & S Grill as a restaurant operated under the name "McCormick & Schmick" on the company website; and (3) M & S Grill is listed as operating under the name "McCormick & Schmick" in McCormick & Schmick Seafood Restaurants, Inc.'s SEC filings. Pl. Mot. Summ. J. at 4, 15.

The Defendants counter that: (1) "M & S" is not literally "McCormick & Schmick;" (2) only a restaurant named "McCormick & Schmick" violates § 10.5; and (3) M & S Grill's trade name is not "McCormick & Schmick." Def. Mot. Summ. J. at 17.

 If a contract is unambiguous, "the court must give effect to its plain meaning and not contemplate what the parties may have subjectively intended ..." *Nova Research, Inc. v. Penske Truck Leasing Co.*, 405 Md. 435, 448, 952 A.2d 275, 283 (2008). A contract term is ambiguous if, "when read by a reasonably prudent person, it is susceptible of more than one meaning." *Nova Research, Inc. v. Penske Truck Leasing Co.*, 405 Md. 435, 448, 952 A.2d 275, 283 (2008). If a term is ambiguous, its interpretation is a question for the factfinder. *Prison Health Services, Inc. v. Baltimore County*, 172 Md. App. 1, 8, 912 A.2d 56, 61 (Md.Ct. Spec.App.2006).

Section 10.5 states that "any restaurant operating under the name of 'McCormick and Schmick' ... shall be deemed 'another restaurant of a similar kind.'"

 Section 10.5's use of quotation marks strongly suggests that only a restaurant identifying itself as "McCormick & Schmick" is deemed a restaurant of a similar kind.[2]

---

provide notice under § 39.1.2 will not—in and of itself—relieve the Defendants of the obligation—if any is determined—to pay the Additional Rent.

**2.** Although "punctuation cannot control or alter the effect of language that is plain in its meaning," *Laurel Race Course, Inc. v. Regal Const. Co., Inc.*, 274 Md. 142, 153, 333 A.2d

Additionally, when "McCormick & Schmick" is in § 1.6 of the lease, it identifies the tenant's trade name.[3] This suggests that under § 10.5, only a restaurant with the name "McCormick & Schmick" is "a restaurant of a similar kind."

■ As Harbor Hotel notes, however, the term "operating under" does not unequivocally refer to a restaurant's trade name. Pl. Repl. at 8. Because the term "is ambiguous," whether "M & S Grill" operates under the name "McCormick & Schmick" is a question for the factfinder.

### 3. Does the M & S Grill "Menu Consist[s] of 50 [Percent] or More Seafood Entrees"?

Section 10.5 of the lease states that "any restaurant ... whose menu consists of fifty percent ... or more seafood entre[e] items shall be deemed 'another restaurant of a similar kind.'" Pl. Mot. Summ. J. Ex. 1. Harbor Hotel contends that the M & S Grill menu consists of at least 50 percent seafood entrees. Pl. Mot. Summ. J. at 5, 17.

#### a. What is a Menu?

"Menu" is not defined in the lease. The parties disagree about the meaning of the term "menu." Harbor Hotel contends that the menu attached to the M & S Grill lease ("the old menu") contains "fifty percent or more" "menu" seafood entree items Pl. Mot. Summ. J. at 5, Ex. 4. D00495. Harbor Hotel also contends that (1) each individual menu presented to customers, or (2) the aggregate menu created by its expert, is a "menu" under § 10.5. Hr'g Tr. at 8–11; Pl. Mot. Summ. J. at 13–14, 17.

The Defendants assert that the "menu" described in § 10.5 is not the old menu, but instead refers to the individual menus for each day of a restaurant's operation. Def. Mot. Summ. J. at 25–29. Thus, Defendants' proposed menu is the combined M & S Grill lunch and dinner menus for each day of service. See Def. Mot. Summ. J. at 25; Def. Mot. Summ. J. Ex. 12; Hr'g Tr. at 23–24.

■ The old menu was used at the Washington, D.C. M & S Grill before March 11, 2003, the date on which the Harborplace lease was signed. Id. at Ex. 4, D00409, D00495–497. Although the parties agree that the old menu contains more than 50 percent seafood entrees, Pl. Mot. Summ. J. at 5, Def. Mot. Summ. J. at 23, the Defendants contend—and Harbor Hotel does not dispute—that the old menu was never given to customers of the M & S Grill in Harborplace. Although the old menu may be some evidence of the type of menu meant by § 10.5 of the 1997 lease, it does not—standing alone—entitle the Plaintiff to relief.

The old menu is not dispositive of whether M & S Grill is a "similar kind" of restaurant under § 10.5. As Harbor Hotel recognizes, however, the 1997 lease does not specify which menus "must be examined for seafood entree items." Pl. Repl. at 11. Accordingly, whether M & S Grill's "menu" violates the 1997 lease is a question of fact. *Prison Health Services, Inc.,* 172 Md.App. at 8, 912 A.2d at 61 (Md.Ct. Spec.App.2006).

#### b. What is a Seafood Entree?

The parties also disagree about when an entree is a "seafood entree." Harbor Ho-

---

319, 327 (1975), punctuation may illuminate the plain meaning of a provision. *See, e.g., Harleysville Mut. Ins. Co. v. Zelinski,* 393 Md. 83, 86 n. 1, 899 A.2d 835, 836 n. 1 (2006); *Owens–Illinois, Inc. v. Cook,* 386 Md. 468, 497, 872 A.2d 969, 986 (2005).

**3.** The term McCormick & Schmick is used elsewhere in the lease, but is not enclosed in quotation marks. Def. Repl. at 9; *see, e.g.,* Pl. Mot. Summ. J. Ex. 1 §§ 1.3, 1.4.

tel, like the Defendants' expert, contends that an entree with seafood and non-seafood elements is half of a seafood entree under § 10.5. Pl. Mot. Summ. J. at 12; Ex. 5. The Defendants agree that their expert stated that an entree with seafood and non-seafood elements is counted as a half seafood entree, but contend that such an entree is a "combo" entree that is not to be counted as a seafood entree under § 10.5. Def. Mot. Summ. J. at 28; Ex. 13.

To further complicate matters, many of the M & S Grill entrees include the option of adding a crab cake. Pl. Mot. Summ. J. Ex. 12, D00008. Harbor Hotel contends that if a menu has 10 non-seafood entrees with the option of adding a crab cake, each of those entrees is one half of a seafood entree. Pl. Mot. Summ. J. at 12; Ex. 4. Using the same example, the Defendants contend that adding a crab cake creates 20 entrees, 10 of which are each one half of a seafood entree, and 10 of which are non-seafood entrees. Def. Mot. Summ. J. at 29; Pl. Mot. Summ. J. Ex. 4.

■ The term "seafood entree" may be reasonably construed either way. *Nova Research, Inc.*, 405 Md. at 448, 952 A.2d at 283. Accordingly, the construction of this ambiguous term is a matter for the factfinder. *Prison Health Services, Inc.*, 172 Md.App. at 8, 912 A.2d at 61.

### 4. Is the M & S Grill, generally, a restaurant of a Similar Kind?

Harbor Hotel contends that, in addition to being "deemed a restaurant of a similar kind," under § 10.5, M & S Grill is a "restaurant of a similar kind" as the term is generally used in the 1997 lease.[4] Pl. Mot. Summ. J. at 16. The Defendants appear to agree that "restaurants of a similar kind" are restaurants that share similar marketing positions, prices, wine selections, service, and decor. Def. Mot. Summ. J. at 18–25, 29–34; Pl. Mot. Summ. J. at 5–11.

The parties' motions papers did not discuss the interplay between the permitted use clauses in the 1997[5] and the M & S Grill leases[6] and the interpretation of "similar kind" in § 10.5. At the motions hearing, Harbor Hotel stated that § 1.23 does not define "similar kind," and "similar kind" is broader than the permitted use clause. Hr'g Tr. at 7–8. The Defendants stated that the permitted use in § 1.23 of the 1997 lease defines "similar kind," and only restaurants described in § 1.23 violate § 10.5. Hr'g Tr. at 32.

Section 1.23 of the 1997 lease permits the tenant to operate an "upscale, sit-down, full service white tablecloth seafood restaurant . . ." *Id.* at Ex. 1 § 1.23. Section 1.1.F. of the M & S Grill lease permits the tenant to operate a "full service, medium to better quality M & S Grill restaurant . . ." *Id.* at Ex. 4 § 1.1.F. The permitted use of the Harborplace lease may encompass the permitted use of the 1997 lease agreement because a "better quality M & S Grill restaurant" may be an "upscale, sit-down, full service white tablecloth seafood restaurant." Whether § 10.5 prohibits the

---

4. Section 10.5 states that "neither Tenant nor any of its affiliated parent or subsidiary companies . . . shall operate . . . another restaurant of a similar kind within a 10 mile radius of the Premises . . ." Pl. Mot. Summ. J. Ex. 1. Section 10.5 goes on to state two situations in which a restaurant is "deemed a restaurant of a similar kind." Because § 10.5 does not state that a restaurant is only of a similar kind

if it meets the deeming criteria, the clause may be interpreted to allow a finding that a restaurant that meets neither deeming criterion is of "similar kind." *Id.*

5. Pl. Mot. Summ. J. Ex. 1 § 1.23.

6. Pl. Mot. Summ. J. Ex. 4 § 1.1.F. 10

operation of the M & S Grill is a question of fact.[7]

■ Because there is a genuine dispute of material fact whether McCormick & Schmick and M & S Grill are—generally—restaurants of a similar kind, Harbor Hotel's motion for summary judgment must be denied. *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

### B. Defendants' Motion for Summary Judgment

The Defendants seek summary judgment on the grounds that (1) Harbor Hotel waived or limited its right to relief by failing to object to M & S Grill's Harborplace presence for four years, (2) M & S Grill is not "deemed a restaurant of a similar kind," and (3) M & S Grill is not generally a restaurant of a similar kind.

### 1. May the M & S Grill be "Deemed a Restaurant of a Similar Kind"?

The Defendants seek partial summary judgment on whether M & S Grill is deemed a restaurant of a similar kind under § 10.5. As discussed above, there may be issues of material fact whether M & S Grill is in violation of "operating under" the name "McCormick & Schmick" or has a menu with 50 percent or more seafood entrees. Accordingly, summary judgment on the "operating under" and "seafood entree" provision must be denied. *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

---

7. Harbor Hotel argues that (1) M & S Grill contracted with the Rouse Company as a seafood restaurant; (2) the Harborplace lease identifies M & S Grill as "M & S Seafood Grill," Pl. Mot. Summ. J. Ex. 4 at D00410; and (3) Douglas Schmick, M & S Grill's President, testified that the Rouse Company wanted a seafood restaurant for Harborplace. Pl. Mot. Summ. J. at 16.

The Defendants argue, however, that (1) Harbor Hotel mischaracterized the Harborplace Lease and Schmick's deposition; (2) throughout the remainder of the lease, the restaurant is only referred to as "M & S Grill," Pl. Mot. Summ. J. Ex. 4; (3) the lone reference to "M & S Seafood Grill" cited by Harbor Hotel was a typographical error, Def. Mot. Summ. J. at 21–22; and (4) Schmick testified that the Defendants opened M & S Grill in Harborplace only after assuring themselves—out of concern for § 10.5—that M & S Grill was not a seafood restaurant, Def. Mot. Summ. J. Ex. 1 at 114–15. Thus, the Defendants contend that M & S Grill was not intended to be a seafood restaurant.

The parties also disagree about how McCormick & Schmick and M & S Grill are to be categorized. Harbor Hotel cites (1) the conclusion of its expert, Arlene Speigel, that both restaurants are "casual … based on 'industry designation,'" Pl. Mot. Summ. J. Ex. 8 at AS 0012, (2) portions of McCormick & Schmick's "Investor Relations" website and SEC forms that reference casual diners, *Id.*, Ex. 11, and

(3) "Chain Leader's"—a trade publication—reference to McCormick & Schmick and M & S Grill as casual restaurants—to argue that the restaurants share similar marketing positions. Pl. Mot. Summ. J. at 5–7, Ex. 9.

The Defendants oppose Harbor Hotel's characterization of their website and the Chain Leader article. Def. Mot. Summ. J. at 30, 33. They fault Ms. Speigel's method of evaluating the two restaurants and rely on their expert's conclusions about the classification of the two restaurants. *Id.* at 31–34. Michael Birchenall, the Defendants' expert, states that M & S Grill is classified as "moderate" under Zagat classifications and McCormick & Schmick is "expensive." Def. Mot. Summ. J. Ex. 14 at 10.

Finally, the parties disagree about supposed similarities between McCormick & Schmick and M & S Grill's wine list, prices, service, and decor. Harbor Hotel relies on Ms. Speigel and the Chain Leader article to conclude that the two restaurants share similar wine lists, menu prices, levels of service, and interior decor. Pl. Mot. Summ. J. at 5–12; Ex. 8, 9. The Defendants rely on differences in decor that Ms. Speigel failed to highlight in her conclusion, Def. Mot. Summ. at 34, and differences in check price between the two restaurants, Def. Mot. Summ. J. at 32, Ex. 14, for their argument that McCormick & Schmick and M & S Grill are not restaurants of a similar kind.

### 2. Restaurant of a Similar Kind

The Defendants move for summary judgment, contending that the restaurants are not similar because: (1) M & S Grill does not include "The Fresh List" on its menu, unlike McCormick & Schmick; (2) the check prices at the restaurants are substantially different; and (3) McCormick & Schmick is required by the lease to use white tablecloths, which M & S Grill does not use. Def. Mot. Summ. J. at 36.

As Harbor Hotel notes, these facts are countered by its evidence—discussed above—that the two restaurants are similar. Pl. Repl. at 14. That evidence precludes summary judgment for the Defendants.

### 3. Notice and Waiver

The Defendants contend that—if M & S Grill is a restaurant of a similar kind—Harbor Hotel is barred from any recovery before February 1, 2008—30 days after it gave the Defendants written notice of default because: (1) § 39.1 of the lease required Harbor Hotel to provide the Defendants written notice of default and 30 days to cure; and (2) Harbor Hotel waived its rights under § 10.5 because it had constructive notice for more than four years that M & S Grill was open before giving notice of Default under § 39.1.

#### a. Notice Under Section 39.1

Section 39.1 of the lease agreement states,

> If any one of the following events (sometimes called "Default") shall happen, the same shall constitute a Default under this Lease: ... If any of Tenant's covenants, agreements, obligations or conditions set forth in this Lease other than the payment of Rent or Additional Rent are not performed or complied with by Tenant or Tenant's guarantor within thirty (30) days after written notice from Landlord to Tenant of same unless Ten-

> ant shall commence the curing of such default within said thirty (30) day period and shall thereafter diligently and continuously prosecute the curing of same until completion, but in no event shall such cure period exceed sixty (60) days ...

Pl. Mot. Summ. J. Ex. 1 §§ 39.1, 39.1.2. The Defendants contend that § 39.1 requires Harbor Hotel to give written notice and an opportunity to cure before finding a Default. Def. Mot. Summ. J. at 7–9. Harbor Hotel argues that § 39.1's notice requirement is excused by the Defendants' breach of § 10.5, and that § 39.1 does not apply to § 10.5 because § 10.5 is a rent-payment provision. Pl. Repl. at 2–4; Hr'g Tr. at 56.

On May 9, 2007, Harbor Hotel first told the Defendants that they were in breach of § 10.5. Def. Mot. Summ. J. Ex. 4. In a letter of that date, counsel for Harbor Hotel, Dennis Solomon, told the Defendants that they were in breach of § 10.5. *Id.* Solomon's letter concluded, "[t]his is a courtesy letter, rather than a formal notice of default under the Lease." *Id.* On May 23, 2007, the Defendants wrote Solomon, noting that Solomon "alleg[ed] a violation and breach by Tenant of its lease covenants under Section 10.5 of the Lease," but denying that M & S Grill is a restaurant of a similar kind. *Id.* Ex. 5.

On July 31, 2007, Harbor Hotel filed its complaint in the Circuit Court for Baltimore City, alleging a breach of § 10.5. Paper No. 1, Compl. On January 2, 2008, Solomon wrote the Defendants, that, "[n]otwithstanding the Landlord's position that sufficient notice of default was provided" in the May 9, 2007 letter, the Defendants had breached § 10.5 of the lease, and their failure to comply with the lease agreement's remedies for breach of § 10.5 "is a default under the terms of the Lease." The letter concluded, "[t]his is a

notice of default given by the Landlord to the Tenant . . ." *Id.* Ex. 6.

Despite Solomon's January 2, 2008 assertion that the May 2, 2007 letter constituted notice under § 10.5, Harbor Hotel appears to concede that it did not give the Defendants written notice of the default until January 2, 2008, as it does not mention Solomon's argument in its Reply brief. Pl. Repl. at 2–4. Instead, Harbor Hotel argues that the Defendants' failure to obtain its written approval before opening M & S Grill—a restaurant of a similar kind—was a breach of § 10.5 and waived the Plaintiff's obligations under the lease agreement.[8] Pl. Repl. at 3–4. The Defendants reply that § 10.5 requires notice only when the tenant actually operates a restaurant of a similar kind.

Harbor Hotel also argues that § 39.1 does not apply to § 10.5 because § 10.5 is a rent-payment provision. Hr'g Tr. at 50–52. Section § 39.1.2—which requires notice of default and opportunity to cure—applies to "any of Tenant's covenants, agreements, obligations or conditions . . . other than the payment of Rent or Additional Rent . . ."[9] Harbor Hotel contends that § 10.5's requirement that the revenue from similar restaurants be included in the "Annual Percentage Rent" means § 10.5 is a rent provision. Hr'g Tr. at 49–52. The defendants respond that: (1) § 10.5 is a non-payment provision; (2) the reference

to rent is remedial only; and (3) § 39.1.2 applies to § 10.5. Hr'g Tr. at 56.

■■ Harbor Hotel and the Defendants present reasonable interpretations of the interplay between § 39.1 and § 10.5. Because § 10.5 references rent, it may be interpreted as a rent payment provision not subject to § 39.1.2. But § 10.5 may also refer to a remedy within § 39.1.2. The relationship between § 39.1 and § 10.5 is an issue for the factfinder. *Prison Health Services, Inc.,* 172 Md.App. at 8, 912 A.2d at 61.

### b. Waiver

The Defendants contend that Harbor Hotel knew of the M & S Grill when it opened in October 2003, and its long delay in notifying the defendants of the breach of § 10.5 waived its rights under the lease. Def. Mot. Summ. J. at 5; Ex. 3 at 12, 50–51.

■■■ A party to a contract waives its rights under that contract if it (1) intentionally continues performance under the contract after (2) learning of a breach. *Pumphrey v. Pelton,* 250 Md. 662, 667–668, 245 A.2d 301, 304 (1968). Waiver is "the intentional relinquishment of a known right." *Taylor v. Mandel,* 402 Md. 109, 135, 935 A.2d 671, 686 (2007) (*citing In re Blessen H.,* 392 Md. 684, 698, 898 A.2d 980, 988 (2006)).[10]

---

**8.** Harbor Hotel appears to argue that anytime the tenant thinks it may be operating a restaurant of a similar kind, it must notify the landlord under § 10.5.

**9.** Section 39.1.1 of the Harborplace lease requires a notice of default and opportunity to cure for the failure to pay "Annual Base Rent or Additional Rent." Pl. Mot. Summ. J. Ex. 4 § 39.1.1. Section 10.5 refers to "Annual Percentage Rent," which appears to differ from either Annual Base Rent or Additional Rent. *Id.* at § 10.5; *see Id.* at §§ 10.2, 10.3.

**10.** "[T]here can be no waiver unless the person against whom the waiver is claimed had full knowledge of his rights, and of facts which will enable him to . . . enforce . . . such rights." *Id.* (*citing Armour Fertilizer Works v. Brown,* 185 Md. 273, 278–79, 44 A.2d 753, 755 (1945)). If a company "ought to have known . . . facts, or with proper attention to its own business, would have been apprised of them, it has no right to set up its ignorance as an excuse." *Gould v. Transamerican Associates,* 224 Md. 285, 300, 167 A.2d 905, 912 (1961) (*citing Monahan v. Mutual Life Ins. Co.,* 103 Md. 145, 159, 63 A. 211, 213 (1906)).

The Defendants argue that Harbor Hotel has known about the M & S Grill since 2003 when Kenneth Conklin—the senior vice president of marketing for the corporate owner of Harbor Hotel—attended its grand opening, and has known since that date that M & S Grill and McCormick & Schmick are affiliated. Def. Mot. Summ. J. at 11, Ex. 3 at 49. Conklin has also eaten at M & S Grill several times since then. *Id.*

The Defendants contend that Harbor Hotel's officers failed to object to the Harborplace M & S Grill because they had not read the lease agreement. *Id.;* Ex. 2. at 74–76. Noting that Maryland law assumes corporations have knowledge of facts within their possession, *Gould,* 224 Md. at 300, 167 A.2d at 912, they argue that Harbor Hotel's failure to give notice of default until January 1, 2008, demonstrates that Harbor Hotel intended to allow the breach.

The Defendants rely on *Pumphrey v. Pelton,* in which Pelton—a Dairy Queen franchisor—was found to have waived his right to terminate a contract with Pumphrey—a franchisee—based on Pumphrey's breach of a contract provision barring him from selling non-Dairy Queen products at his restaurant. The court held that Pelton waived his rights under the contract because he "agreed by his conduct to a modification of the contract." 250 Md. 662, 671, 245 A.2d 301, 306 (1968).

As Harbor Hotel explains however, Pelton knew that Pumphrey was breaching the contract and publicly and privately agreed to allow the sale of non-Dairy Queen products. Pl. Repl. at 5,

*Pumphrey,* 250 Md. at 663–7, 245 A.2d at 302–4. Unlike *Pumphrey,* Harbor Hotel has not admitted intentionally allowing the defendants to operate a "restaurant of a similar kind" and has not publicly acquiesced to the breach.

Harbor Hotel notes that (1) Conklin is not an officer of Harbor Hotel charged with knowledge of the lease agreement; thus, it had no knowledge of the alleged breach in October 2003, Pl. Repl. at 6; Def. Mot. Summ. J. Ex. 3; (2) it mistakenly thought M & S Grill was a steak house until just before its initial letter to the Defendants on May 2, 2007, Pl. Repl. at 5; Def. Mot. Summ. J. Ex. 3 at 77; and (3) there is no evidence that Harbor Hotel intended to allow the Defendants to breach § 10.5. *Id.* at 5.

Although the Defendants correctly note that intent may be inferred from the circumstances, *Gould.* 224 Md. at 294, 167 A.2d at 909, finding such an inference is a matter for the fact-finder because (1) knowledge of the breach and (2) intent to allow the breach are disputed.

## C. Motion to Strike

Harbor Hotel has moved to strike the written report produced by Douglas Bregman, Esquire, the Defendants' expert real estate attorney. Alternatively, Harbor Hotel seeks to exclude Bregman's written report and testimony. Harbor Hotel argues that Bregman's report and testimony are inadmissable under Federal Rule of Evidence 702 because they contain legal opinions that will not aid the trier of fact in resolving any factual issue. The Defen-

Waiver may result from "an express agreement [to allow the breaching conduct to continue] or be inferred from circumstances." *Gould v. Transamerican Associates,* 224 Md. 285, 294, 167 A.2d 905, 909 (1961). "The intention to waive must be clearly established and will not be inferred from equivocal acts or language." *The Redemptorists v. Coulthard Services, Inc.,* 145 Md.App. 116, 136–37, 801 A.2d 1104, 1116 (Md.Ct.Spec.App.2002). "The question of whether waiver has occurred is a question of fact." *City of Bowie v. MIE Properties, Inc.,* 398 Md. 657, 699, 922 A.2d 509, 534 (2007).

dants contend that Bregman's report and testimony are based on specialized knowledge of commercial leasing and will assist the Court in understanding the context, purpose, and operation of the provisions at issue. Def. Resp. at 1.

### 1. Motion to Strike

■ Under Federal Rule of Civil Procedure 12(f), a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). A pleading is a complaint, an answer to a complaint, an answer to a counterclaim, an answer to a cross claim, an answer to a third-party complaint, or a court-ordered reply to an answer. Fed.R.Civ.P. 7(a). Because Bregman's report and testimony are not pleadings, they are not subject to this rule. *Thomas v. Bet Sound–Stage Restaurant/BrettCo, Inc.,* 61 F.Supp.2d 448, 458 (D.Md.1999); *Modaressi v. Vedadi,* 441 F.Supp.2d 51 (D.D.C.2006).

### 2. Motion to Exclude

■ Federal Rule of Evidence 702 "provides that if 'scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue,' a qualified expert may testify thereto." *Safeway, Inc. v. Sugarloaf Partnership, LLC,* 423 F.Supp.2d 531, 538 (D.Md.2006) (*citing* Fed.R.Evid. 702). Bregman's report and testimony may be admitted if they "concern (1) scientific, technical, or other specialized knowledge that (2) will aid the … trier of fact to understand or resolve a fact at issue." *Westberry v. Gislaved Gummi AB,* 178 F.3d 257, 260 (4th Cir.1999). "Evidence supplied by experts as to legal conclusions is not admissible …" *Safeway,* 423 F.Supp.2d at 538 (*citing Nutrition 21 v. United States,* 930 F.2d 867, 871 n. 2 (Fed.Cir.1991)).

In his report, Bregman explains that his knowledge of commercial leasing is the result of experience (1) authoring a textbook on Maryland landlord/tenant law, practice, and procedure; (2) authoring articles on landlord/tenant law; (3) advising landlords and tenants during commercial lease negotiations and drafting; (4) advising parties on commercial lease litigation; and (5) managing commercial property. Pl. Mot. Ex. 1 at 1. Bregman then (1) explains that certain provisions in the lease agreement are common in commercial leases; (2) comments on the general value of those lease provisions; (3) interprets the landlord's duties under the lease agreement; and (4) states that he believes that Harbor Hotel forfeited any claim under § 10.5 of the Lease Agreement because he failed to give prompt notice of the alleged default. Pl. Mot. Ex. 1 at 2–4.

■ As the Defendants recognize, Bregman's expertise "is intertwined with legal issues and … the ultimate issue to be decided is the interpretation of a contract according to legal principles." Def. Resp. at 4. Because the Court will be the factfinder in this case however, the traditional wariness toward attorney experts is not required. Bregman's report and testimony will be admitted to the extent they illuminate whether the terms used in the 1997 and Harborplace lease are terms of art with uniformly—or widely understood—understood meanings. The Court will remember that it bears the ultimate responsibility for interpreting the leases.

## III. Conclusion

For the reasons stated above, Harbor Hotel's motion for partial summary judgment, the Defendants' motion for summary judgment, and Harbor Hotel's motion to strike will be denied.